242 McBride, et al., vs. Murphy, et al.

Syllabus:—Statement of the Case.

Mary E. McBride, Catherine McBride, Catherine Morley, Julia O'Connell, Margaret Libbey, Elizabeth Ferrier and Frank H. Gillen,

vs.

Matthew D. Murphy, personally, as Executor of the Last Will and Testament of Michael McCartney, deceased, and as Executor of the Last Will and Testament of Adaline M. McCartney, deceased, Sisters of Charity of St. Peter's School, Incorporated, a corporation existing under the laws of the State of Delaware, and Jane Lorgan.

*New Castle, June 4, 1924.*

Quere. If a corporation acquires property in excess of the amount allowed by its charter, is not the State the only party who can complain?

Where testator devised property to his wife for life, with remainder to a charitable corporation, testator's heirs were entitled to litigate the right of such corporation to take the property.

Where testator made a charitable corporation residuary legatee, but such corporation terminated by expiration of its charter prior to testator's death, it was not entitled to take within the three years allowed by *General Corporation Law*, § 40, in which to wind up its affairs.

Where testator gave his property to his wife for life, and after her death to a charitable corporation, to be used "for the support and maintenance of the orphan girls under its care and charge," and such corporation terminated by expiration of its charter before testator's death, thereby incapacitating it from taking under the devise, the general charitable intent could not be inferred so as to make the rule applicable that equity will not allow a charitable disposition to fail for lack of a trustee.

If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs.

Bill For an Accounting. The complainants are heirs at law of Michael McCartney, deceased, upon the construction of whose last will and testament the nature of the decree to be entered will be determined. The will in question is dated January 6, 1897. The testator died in the month of December, 1903, seised and possessed of real and personal property. After directing the

payment of his just debts and funeral expenses, and devising to his wife in fee simple a dwelling house and lot in the City of Wilmington, he provided in a residuary clause, as follows:

"I give and bequeath unto my said wife, Adaline M. T. McCartney, the use, income and improvement of all my property that may remain after paying my debts and funeral and other expenses, and not hereinbefore disposed of, consisting of real and personal of whatsoever nature or kind the same may be, and wheresoever situated at the time of my death for and during the term of her natural life, and from and immediately after the death of my said wife, Adaline T. McCartney, I give, devise and bequeath all of said property, real and personal, of every nature and kind, and wheresoever situated at the time of the death of my said wife, Adaline T. McCartney, unto the Sisters of Charity of St. Peter's School of Wilmington, a corporation existing under the laws of the State of Delaware, and to its successors and assigns forever, to be used by said corporation for the support and maintenance of the orphan girls under its care and charge."

With the exception of a paragraph appointing Matthew D. Murphy as executor, the foregoing is descriptive of the entire will.

The General Assembly of Delaware by special act passed on February 5, 1841, created a corporation by the name of "The Sisters of Charity of St. Peters" to continue for the period of twenty years from the date of the act. By *Section* 1 of this act the incorporators were constituted a body corporate. By *Section* 2 it was provided:

"That said corporation shall during its continuance be able and capable in law to purchase, receive and hold any real or personal property whatsoever, which may be given, conveyed or devised to them, and also to give, grant, let, sell or assign the same; and to do all other matters touching the same which a corporation may legally do with its real or personal property; that the said corporation shall have a common seal, may sue and be sued, plead and be impleaded in any court of law or equity in this state according to law."

It is admitted that by acts of the General Assembly passed in 1861 (12 *Del. Laws, c.* 39) and in 1881 this corporation had its corporate life extended to April 1, 1901. Though there is some variance between the name of the corporation mentioned in the McCartney will and the name of the corporation thus created and extended by the General Assembly, it is agreed by the parties that the corporate beneficiary described in the will is the same corpora-

tion which was originally incorporated in 1841 and whose charter expired by limitation on April 1, 1901.

From the foregoing it will be observed the corporation named by the testator was in existence at the time of the execution of his will, but that the period of existence named in its charter had expired something like two years and eight months before the testators' death.

By the *General Corporation Law* of this State it is provided as follows:

"*Sec.* 40. All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from said expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which said corporation shall have been established." *Revised Code* 1915, § 1954.

About seven days before the expiration of the statutory period mentioned in the foregoing section, viz., on March 24, 1904, "The Sisters of Charity of St. Peter's" executed and delivered a deed of bargain and sale and assignment for the consideration of $10 to a new corporation which had been formed on March 4, 1904. This corporation is one of the defendants named in the bill and is known as "Sisters of Charity of St. Peter's School, Incorporated." The deed referred to conveyed to the grantee, its successors and assigns, title to a certain piece of real estate (not of importance in this suit) and—

"All the property, rights, titles and interests of every kind and wherever situate, whether in possession or in expectancy, whether held in a fiduciary relation or otherwise, of it, the said party of the first part."

Adaline M. T. McCartney, the widow and life tenant named in the residuary clause of her husband's will, is now dead, and the question arises: What, under the circumstances above set forth, is the proper disposition to make of the real and personal property embraced within the residuary clause?

The complainants contend that because of the expiration of the period defined by the special act incorporating "The Sisters

of Charity of St. Peter's," the gift to it has failed and lapsed; wherefore it belongs to them as heirs at law of the testator. The defendant, the new corporation known as "Sisters of Charity of St. Peter's School, Incorporated," contends that it is entitled to receive the gift by virtue of the said conveyance made to it on March 24, 1904.

The prayers are that the complainants be decree to be entitled to the residuary estate as heirs at law of the testator and his legal respresentatives under the intestacy statute; that the defendant, Matthew D. Murphy, personally and as executor of Michael McCartney and Adaline M. T. McCartney account to the complainants; and that certain relief not necessary at this time to mention be afforded against the defendant, Jane Lorgan.

*William S. Hilles*, for the complianants.

*Charles F. Curley*, for the defendants.

THE CHANCELLOR. The real controversy in this case is between the heirs at law of Michael McCartney on the one side, and the corporation known as Sisters of Charity of St. Peters School, Incorporated, created March 4, 1904, under the General Corporation Law of this State, on the other side. Throughout this opinion this corporation will be referred to as the new corporation, and the corporation which was named as Mr. McCartney's residuary devisee and legatee in remainder will be referred to as the old corporation. This will obviate any confusion that may arise from similarity of names.

First. The claim of the new corporation is founded on the deed of March 24, 1904, made to it by the old corporation. The legal sufficiency of this deed to confer any rights on the new corporation is assailed by the complainants because of the expiration of the life of the old corporation before the death of the testator and its consequent impotency to take the gift made to it by him. If the gift was inoperative because of the non-existence of the named beneficiary, then it is contended that it lapsed and that the heirs at law became entitled and that no estate or interest was vested in the old corporation which was capable of transfer or assignment to the new corporation.

(a) Against this contention the defendants urge that the complainants are not competent to press it, the State of Delaware alone being the only party that can question the right of the old corporation to take and hold under the will. On this point the solicitor for the defendants cites the following cases: *Jones v. Habersham*, 107 *U. S.* 174, 2 *Sup. Ct.* 336, 27 *L. Ed.* 401; *Brigham v. Brigham Hospital*, 134 *Fed.* 513, 67 *C. C. A.* 393; *Hamsher v. Hamsher*, 132 *Ill.* 273, 23 *N. E.* 1123, 8 *L. R. A.* 556; *Alexander v. Tolleston Club*, 110 *Ill.* 65; *Farrington v. Putman*, 90 *Me.* 405, 37 *Atl.* 652, 38 *L. R. A.* 339; *Hanson v. Little Sisters of the Poor*, 79 *Md.* 434, 32 *Atl.* 1052, 34 *L. R. A.* 293; *Hubbard v. Worchester Art Museum*, 194 *Mass.* 280, 80 *N. E.* 490, 9 *L. R. A.* (*N. S.*) 689, 10 *Ann. Cas.* 1025; *Mansfield v. Neff*, 43 *Utah*, 258, 134 *Pac.* 1160. These cases are all to the point that when a corporation is given the power to acquire property not in excess of a specified value, no one but the State can be heard to complain if the corporation acquires property which exceeds in value the limit named. Authorities cited by the solicitor for the complainants to the contrary on this proposition are the following: *Chamberlain v. Chamberlain*, 43 *N. Y.* 424; *In re McGraw*, 111 *N. Y.* 66, 19 *N. E.* 233, 2 *L. R. A.* 387; *Wood v. Hammond*, 16 *R. I.* 98, 17 *Atl.* 324: *Davidson College v. Chamber's Ex'rs.*, 56 *N. C.* 253; *Kennett v. Kidd*, 87 *Kan.* 652, 125 *Pac.* 36, 44 *L. R. A.* (*N. S.*) 544, *Ann. Cas.* 1914A, 592; and *Compton v. Moore*, 156 *Ky.* 544, 161 *S. W.* 540.

The instant case does not call for a selection between the opposing theories advanced by these two groups of cases. If it did, I incline to the opinion that those first cited express the sounder and better considered views. The case now before the court, however, is quite dissimilar in principle to those cases. It will be found on reading them that the controlling consideration is that the limitation as to amount which the State has imposed ont he particular corporation is one that is founded in public policy. The provision defining the limitation is spoken of as being only "directory" and as being for the protection of the State. In the event of a violation of the restriction, the act of the corporation is held to be only voidable. Consequently the State can proceed to forfeit the charter or perhaps to procure a forfeiture of the surplus property. In any event, the corporation having the power generally to acquire

McBride, et al., vs. Murphy, et al.          247

Opinion.

property, the State in whose interest the limitation as to amount is imposed, may very properly be held to be the only person in anywise interested in an ignoring of the limitation. If it sees fit to overlook the offense, who else has a right to complain?

Mr. Justice Bradley, sitting on circuit in *Jones v. Habersham*, 3 *Woods*, 443, *Fed. Cas. No.* 7465 (affirmed in 107 *U. S.* 174, 2 *Sup. Ct.* 336, 27 *L. Ed.* 401), said:

"Certain things are *ultra vires* of a corporation; but when it has the power to hold property, and is forbidden to hold beyond a certain amount, the matter being one of degree merely, or of more and less, this is not a question of *ultra vires*, but of violation of its charter."

In *Davis v. Old Colony R. R.*, 131 *Mass.* 260, 41 *Am. Rep.* 221, will be found similar expressions pointing out the distinction between exercising a power not conferred upon the corporation, and the abuse of a general power or failure to comply with prescribed regulations. See also *Farrington v. Putnam, supra*, for recognition of the same distinction.

The question involved here is not concerned with an abuse of an admitted power. It is concerned with whether there is in fact any power to acquire property by devise. The industry of the solicitor for the defendants has produced no authority to the effect that a corporation which lacks power to acquire title to property may not be intercepted in an act of attempted acquisition by one who, but for the interposition of the corporation, would himself be entitled thereto. In *State, Use of Wiltbank, v. Bates, Adm'r.*, 2 *Har.* 18, the heirs at law were allowed to recover from an administrator the proceeds of sale of real estate which had been devised to a corporation, on the ground amongst others, that the corporation had no power to take real property by devise. It is true that the point that the State alone could question the corporation's power appears not to have been raised. The case is referred to not as an authority on the question, but only as showing that if the point occurred to the eminent counsel engaged in the argument it was rejected as without merit. And again, it may be argued that case is distinguishable as involving a limitation upon the testamentary right of disposition.

It frequently occurs that the doctrines of estoppel preclude the raising of any question concerning the existence or non-exis-

tence of a corporation or its assumed powers. But in this case there is no occasion for an application of such doctrines.

I am of opinion that the complainants are entitled to litigate the right of the old corporation to take the property devised and bequeathed to it in the residuary clause of the McCartney will.

(b) The next inquiry is: Did the devisee corporation have power to take?

What were the corporate powers of this corporation in the first instance? Reference to the special act incorporating it (see statement of facts) discloses its powers to have been very limited. Its purposes are not specificially defined. Reasoning from the powers expressly granted its purpose was to do nothing more than acquire and deal in real and personal property. As a matter of fact, however, it engaged in the laudable business of conducting an orphanage at Sixth and West Streets in the City of Wilmington, where it supported and maintained orphans. Its corporate powers, however, were confined to acquiring, etc., property both real and personal. It was moreover specifically empowered to acquire property by devise. Its corporate life expired by limitation of time on April 1, 1901, before the will of the testator took effect. On that date, if it were not for the statute about to be mentioned, it would have ceased to exist as completely as does a natural person at death, and being non-existent its theretofore existent corporate power to acquire property by devise would have expired with it. See 8 *Fletcher Cyc. Corp.*, §§ 5424, 5564, 5573, 5575, 5596; 1 *Thompson on Corporations*, § 243; 5 *Thompson on Corporations*, §§ 6476, 6550, 6553, 6554, 6556; 7 *Ruling Case Law, p.* 735, and the numerous cases cited in support of the text of these citations.

Indeed I do not understand the solicitor for the defendants to contend against the correctness of this proposition. He seeks to avoid its hostile results, however, by pointing out that under *Section* 40 of the *General Corporation Law* of this State, the old corporation did not become extinct on April 1, 1901, but that its life was continued for three years thereafter, to-wit, until April 1, 1904, a date subsequent to when the will in this case took effect. The section referred to is quoted in the statement of the case. That section does grant to expired corporations a continued existence for three years. But the additional three years of life is

granted for only the limited purpose of prosecuting and defending suits and of enabling the corporation gradually to settle and close its business, to dispose of and convey its property and to divide its capital stock. In order that there might be no implication of powers beyond those specifically named, the section proceeds to deny to any corporation to which it applies any right to continue as a corporation for the purpose of conducting the business for which it was established. If it be granted that the corporation was established to conduct an orphanage (a thing which as before noted the charter failed to indicate), the franchise in that behalf certainly ceased on the first day of April, 1901. Confining ourselves strictly to the precise metes and bounds of the franchise as defined in the charter, we find that it had power to acquire and hold property, and to dispose of the same. All these powers were terminated upon the expiration of the corporate charter on April 1, 1901, except those which were extended for the three year period of grace, and so far as this case is concerned these were only such powers as were necessary to wind up the affairs of the corporation. If in the process of settling and closing the business it was essential that property be acquired, *Section* 40 would doubtless authorize the acquisition. This, however, would be only as incidental and necessary to the delegated power to wind up. Certainly it cannot be said that taking property under the residuary clause of this will would in any wise be connected with or related to the settling and closing of the corporate business. It would be rather the exercise of power granted by the original charter to acquire property, and, instead of contemplating a winding up, it would look forward rather to a continuance of the business first authorized. The total corporate powers may be represented as an integer, one-half of which was the power to acquire property and the other half of which was the power to dispose of it. The first half was destroyed by the termination of the charter and the second half continued by the statute as necessary to the winding up. In *Big Sespe Oil Co. v. Cochran*, (*C. C. A.*) 276 *Fed.* 216, *Section* 40 was before the Circuit Court of Appeals, Ninth Circuit, for consideration, and it was th ere held that the corporate life was extended by the section only for the purpose of settling and closing the business and that "the corporation itself  *  *  *  becomes a trustee for the purpose o$_f$

conveying and dividing its property and otherwise winding up its affairs." See, also, *Olmstead v. Distilling Co.*, (*C. C.*) 73 Fed. 44. This view would appear to be entirely correct.

It is impossible for me to escape the conclusion that so far as the right to acquire the property under the residuary clause in question is involved, the old corporation was as dead as a natural person could be on the date when the testator's will became effective, and that therefore it could take no interest thereunder. *Houston, et al., v. Utah Lake Land, etc., Co.*, 55 *Utah*, 393, 187 *Pac.* 174. Taking nothing itself, it could convey nothing by its deed to the new corporation.

The residuary devise and legacy in remainder failing for want of a devisee and legatee in existence at the time capable of taking, it lapses. The property covered by it goes to the heirs at law, and the complainants are entitled to an accounting. If the reasons hereinbefore given are not sufficient to sustain this conclusion, what is now to follow under the second head will, either in conjunction with the foregoing, or standing alone, amply sustain the complainants' right to the relief asked for.

Second. The solicitor for the defendants contends that if it should be determined that the old corporation acquired no right, title or interest which passed by the conveyance of March 24, 1904, it does not follow that the complainants are entitled to enjoy the property covered by the residuary clause because, it is contended, the langue of that clause discloses the testator's intent to have been to make a charitable disposition for the benefit of undefined individuals of a definite class, viz., female Catholic orphans of the Diocese of Wilmington and a court of equity will not allow such disposition to fail for a lack of a trustee through whom such charitable disposition can be effectuated.

This contention calls for a consideration of this will in another point of view. In the first place there is nothing in the will which shows that the class of persons intended by the testator to be the objects of his bounty was "female Catholic orphans of the Diocese of Wilmington," as stated by the solicitor for the defendants. It may have been and doubtless was true that the corporation named drew from this class in selecting the particular orphans whom it would maintain and support. It is stated that the testa-

tor knew this. If he did, he nevertheless chose language which confined his bounty to those only of the class who happened to be in the care and charge of the specifically named corporation. It is difficult to see how an interest could at any time have been asserted on behalf of any orphan children who were not at the time in the care and charge of this institution.

It is important to bear in mind that the will in question displays no intent to benefit the institution named. The purpose was to benefit the orphan girls under its care. Could for instance the corporation have taken the property and applied it to its own purposes? It is plain that it could not. In all essentials it was but a trustee for the orphans in its care and charge for whose benefit the gift was intended. *Church Extension, etc. v. Smith, etc.*, 56 *Md.* 362. That the trust was of a charitable nature is beyond doubt. If it were what is familiarly spoken of in the cases as a general or public charity, there could be no debate concerning the power of a Court of Chancery to preserve the testamentary intent and fully effectuate it notwithstanding the trustee designated in the will were no longer in existence. The case of *State v. Griffith*, 2 *Del. Ch.* 392, is conclusive upon this point. *Doughten v. Vandever*, 5 *Del. Ch.* 51, cited by the defendants contains language in harmony with the prior case of *State v. Griffith*, though it makes no reference to it. The *Doughton-Vandever Case*, however, deals not so much with questions involved in the law of charities as with those questions which concern the indentification of beneficiaries.

There is no occasion for me to traverse the field of discussion which the Chancellor and the Court of Errors and Appeals so ably and learnedly covered in *State v. Griffith*. It is sufficient to say that the instant case falls outside the principles which that case settled. There is a doctrine applicable here which that case supplied no occasion for emphasizing, and which, therefore, it would not be superfluous to point out.

The doctrine referred to received its first definite statement in the English case of *Clark v. Taylor*, 1 *Drewry*, 642, decided by Vice Chancellor Kindersley in 1853, though as indicated by him it was fixed in the adjudications before that time. His language is:

"Now, there is a distinction well settled by the authorities. There is one class of cases in which there is a gift to charity generally, indicative of a general

252    McBride, et al., vs. Murphy, et al.

Opinion.

charitable purpose, and pointing out the mode of carrying it into effect; if that mode fails, the court says the general purpose of charity shall be carried out. There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution; and then if it fails, because there is no such institution, the gift does not go to charity generally; that distinction is clearly recognized; and it cannot be said that, wherever a gift for any charitable purpose fails, it is nevertheless to go to charity."

The case in which this distinction was thus first formulated presented a gift by will to a particular charitable institution which had ceased to exist, and the gift was held to have failed. See *In re Rymer*, [1895] 1 *Ch. Div.* 32, for correction of mistake of facts in the report of *Clark v. Taylor* in 1 *Drewry*. The same distinction was stated, though not so fully, in the later case of *Russell v. Kulett*, 3 *Sm. & Giff.* 264, decided in 1855, in which the gift was held to fail because the particular object of the testator's charity had ceased to exist.

A later English case (*Marsh v. Attorney General*, 2 *J. & H.* 61, decided in 1860) illustrates the sort of situation which under the distinction pointed out in *Clark v. Taylor*, *supra*, will prevent a failure of the gift. That was a case where there was a bequest to a nautical school to be applied in instructing youth in specified subjects. The bequest was held not to fail and a scheme was ordered to be devised for its application. This decision proceeded on the conception that the bequest was not to the particular institution nor for the benefit of the particular youth there educated, but for the instruction of youth generally. In *Fish v. Attorney General*, *L. R.* 4 *Eq. Cas.* 521, decided in 1867, Sir W. Page Wood, Vice Chancellor, relied upon *Clark v. Taylor*, *supra*, and *Stuart v. Russell*, *supra*, in holding that "when a gift is made by a will to a charity which has expired, it is as much a lapse as a gift to an individual who has expired," and he would not entertain the suggestion that the gift might be preserved for beneficiaries in a like class. The next English case in point of time is *Broadbent v. Barrow*, 29 *Ch. Div.* 560, decided in 1881, which follows the earlier cases in holding that a legacy to a hospital which unknown to the testator had ceased to exist at the date of his will, must lapse and could not be applied for the benefit of charitable objects similar to those served by the hospital selected by the testator as the particular object of his benefaction. So likewise in the case of

*In re Rymer*, (1895) 1 *Ch. Div.* 19, the same principle was applied. The case of *Makeown v. Ardagh* appears in the *Irish Reports, Equity Series* (1876) *Vol.* 10, *Page* 445, and follows the same principle.

Such is the course of judicial opinion in England where the generous principles of the *cy pres* doctrine are liberally applied to rescue charitable dispositions from failure.    In this State, that doctrine has never found acceptance.    *Doughten v. Vandever*, 5 *Del. Ch.* 51.    This being so, the English decisions are entitled to greater weight upon the point now under consideration than they would otherwise be accorded.

The American case of *Merrill v. Hayden*, 86 *Me.* 133, 29 *Atl.* 949, though not explicit in setting forth the reasons on which the decision was based, must have proceeded on the principle which the English cases above referred to so clearly enunciate.    In that case there was a charitable bequest to a particular corporation in existence at the date of the will.    Before the testator's death, however, this institution had turned over all its affairs and assets to a new corporation as its successor.    The new corporation asserted claim to the fund but the court refused recognition of the claim and held the legacy to have lapsed.    This result must have been reached because of the view that the bequest, having been to a particular institution, could not have been intended as the manifestation of a general charitable purpose.

In *Gladding v. Saint Matthew's Church*, 25 *R. I.* 628, 57 *Atl.* 860, 65 *L. R. A.* 225, 105 *Am. St. Rep.* 904, 1 *Ann. Cas.* 537, the Supreme Court of Rhode Island accepts the doctrine of the leading English case of *Clark v. Taylor, supra*, and after a full discussion of the American cases and citations from authoritative text-writers, holds that under circumstances similar to those found in the instant case the gift lapses and cannot be effectuated on any theory of a general charitable intent.

It is unnecessary to extend this opinion by a further reference to cases.    I am satisfied both on authority and what appeals to me as reason that the rule laid down in the case of *Clark v. Taylor, supra*, is correctly expressive of the law in this country as well as in England.

It cannot make any difference whether the gift was to the

254          McBride, et al., vs. Murphy, et al.

Opinion.

charitable institution absolutely, or upon trust to use it for the benefit of the particular class of individuals to whom it administers its aid. In neither case can a general charitable intent be inferred. Accordingly the premise from which the argument advanced by the solicitor proceeds under this second head is not tenable.

In the instant case, as before noted, the gift constitued a trust in favor of the orphan girls in the care and charge of the corporation named. When that corporation ceased to exist, whether before or after the testator's death, the trust failed. Suppose the corporation trustee had in fact survived the testator and had received the property and then, before it had been actually applied to the maintenance and support of the orphan girls in its care and charge, suppose the corporation had ceased to exist; could the trustee have used the devised assets in distribution to its members or have turned them over to some other institution to take care of orphans in the care and charge of others? I conceive it could have done neither of these things, because such a course would have been in plain violation of the testator's will. In such case there would have been a failure of the purposes of the trust. And so now, whether the old corporation had expired on March 24, 1904, the date of the transfer to the new corporation, or on April 1, 1904, seven days later, there has been in either case a failure of the purposes of the trust. If this be true, it then follows that the case may be decided without reference to the question of the existence or non-existence of the old corporation on March 24, 1904, and regardless of what might be the correct answer to the point herein disposed of under the first head. This is said, not for the purpose of qualifying the conclusion reached under that head, but solely to point out that the point under present discussion is ample in itself to sustain the right of the complainants to the relief asked.

In speaking of the various forms of resulting trusts Professor Pomeroy in *Section* 1032 of his third volume on *Equity Jurisprudence* (*4th Ed.*) uses the following language:

"Where property is conveyed by will or deed upon some particular trust or particular objects, and these purposes fail in whole or in part, * * * in all of these cases a trust, either with reference to the whole property or to the residuum results in favor of the grantor, or the heirs, residuary devisees or

legatees, or personal representatives of the testator. The following are illustrations: Where property * * * is given upon some trust which has wholly failed and become inoperative."

Similarly it is stated in 1 *Perry on Trusts*, (*6th Ed.*) § 159, that:

"If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs."

And in 3 *Story's Equity Jurisprudence*, (*14th Ed.*) § 1592, it is said:

"Another form in which a resulting trust may appear is where there are certain trusts, created either by will or deed, which fail in whole or in part. * * * In all such cases there will arise a resulting trust to the party creating the trust, or to his heirs and legal representatives, as the case may require."

In the instant case the old corporation is now dead. Whatever might have been its condition on March 24, 1904, all the parties now agree that for the purposes of this case it is *now* dead. (The attempted renewal of its life something over twenty-two years after the expiration of its charter on April 1, 1901, was at the argument conceded to be of no avail for the purposes of this suit.) As stated it is now dead, and there are no orphan girls in its care and charge to answer to the description of the class intended by the testator to be benefited by his bounty. There is, therefore, a complete failure of the purpose of the trust. The consequence is that the complainants are entitled to receive the property as heirs at law or distributees of the testator.

Let a decree be prepared in harmony with the foregoing.

NOTE. On appeal to the Supreme Court the decree entered in this case was affirmed. The opinion of the Supreme Court is reported *post p.* 457.