EILA H. MCKEE,

*vs.*

STANDARD MINERALS CORPORATION, a corporation of the State of Delaware.

EILA H. MCKEE,

*vs.*

STANDARD MINERALS CORPORATION, a corporation of the State of Delaware.

*New Castle, July* 22, 1931.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, for defendant.

THE CHANCELLOR:

*The Dissolution Case.*

If the defendant's charter was revived by proceedings under *Section* 73 of the act, a receiver for it as a dissolved

corporation could not of course be appointed. It is admitted that a certificate was filed with the Secretary of State, which, if the facts therein recited are true, show all proper steps to have been taken necessary to revive and continue the charter. The complainant contends, however, that the certificate of renewal, accepted and filed by the Secretary of State and duly recorded, should be treated as a nullity, because, it is contended, the execution and filing of the certificate were never authorized by lawful resolution of the corporation's directors. It appears that the by-laws provide for a board of seven directors, of whom a majority should constitute a quorum. The board however had been depleted for one cause or another to five or possibly four. Three of the directors met, authorized the payment of the back taxes and directed the proper officers to file the certificate necessary for renewal. The complainant insists that the action taken at that meeting was not corporate action because no notice of the meeting was given to all the directors then in office. The defendant replies to this by producing testimony that the meeting in question was held on a regular meeting day of the board and no notice was necessary. But even so, the question remains of whether, in face of the by-law requirement of four as a quorum, the three directors present could transact business.

Assuming that the three directors could not take action at the meeting, yet I do not think a receiver should be appointed on the complainant's application. So far as the records in the office of the Secretary of State disclose, the life of the corporation was properly renewed. If the record in the Secretary of State's office embodies a falsehood, it seems to me that it is a matter about which the State should complain. I am unable to see by what right the complainant can attack the renewed existence of the corporation. That the State could avoid the renewal, there could be no doubt. The principle of *State ex rel. Southerland v. U. S. Realty Improvement Co.*, 15 *Del. Ch.* 108, 132 *A.* 138, decides that.

If the question were whether the defendant has a right to be a corporation, authority is not needed to show that only the State has a right to raise it. The instant case does not present that exact question, because the defendant is a corporation, even if dissolved, for on dissolution the corporate life is continued for three years for the limited purpose of winding up the business. *Section* 40, *General Corporation Law* (*Revised Code* 1915, § 1954). It could exercise none of its theretofore existing powers however, except as the same were used incidentally to winding up its affairs. *McBride, et al., v. Murphy, et al.,* 14 *Del. Ch.* 242, 124 *A.* 798. When its charter is renewed, however, it is restored to its old franchises. It changes from a corporation with limited powers to be used only in course of winding up, to a corporation reinvigorated by the State with all of its former franchises. Where the requirements of the law appear to have been complied with and the Secretary of State has issued the necessary certificate as provided in *Section* 74 (*Revised Code* 1915, § 1988) and the same duly recorded, I think the State is the only party entitled to question the finality of the record.

The bill in the dissolution case should be dismissed.

### The Insolvency Bill.

The debts of this corporation, according to the complainant, are for the most part debts that were incurred by other corporations and that are fastened upon the defendant by reason of its acquisition of the assets of those other corporations. The defendant purchased the assets of the other corporations and paid therefor in shares of its own stock issued directly to the stockholders of the selling corporations. The selling corporations failed to make provision for the payment of certain debts and these are said to be the obligations of the defendant. The theory is that if stockholders of one corporation turn over its assets to another corporation, receiving unto themselves the stock

of the transferee in payment, the transaction is void as against the creditors of the former, and they may look to the latter for satisfaction to the extent of the value of the assets received. Without undertaking to review the authorities bearing on the question, I think it may be said that the courts are in unanimity upon the proposition that when a transaction of that sort takes place, it is a fraud on creditors and is void as to them. The creditor may proceed on the theory that the assets are impressed with a trust in his favor and pursue them in the hands of the transferee. According to some courts he may proceed on another theory and ignore the transaction; and, having obtained a judgment against his debtor corporation, he may seize the property in the hands of the transferee as though it had never changed title. He could, of course, also pursue the proceeds derived by the stockholders of his debtor—but that alternative of remedy does not interest us here. We are concerned only with the creditors' rights against the transferee corporation.

As to the acquiring company, whatever be the form of the remedy permitted against it, I have seen no case that holds its liability to be greater than the value of the assets received to which the creditor was formerly entitled to look for satisfaction when the same were in the hands of his debtor.

The foregoing observations are evoked by the stress which the defendant puts upon the fact that the debts charged against the defendant are debts which companies other than the defendant created, and for which, it is argued, the defendant cannot therefore be liable. It is of course true that the defendant is not liable in the sense of its being the direct debtor. It could not be called upon to pay its transferrors' debts in excess of the values received by it in the transfers, there being no express undertaking to that effect. Assets in its hands, however, are liable. In one sense it is in a position similar in substance to a purchaser of real estate encumbered by an existing mortgage. The

present owner is not liable personally, but the land he holds is subject to payment of the lien. A transferee-corporation, however, has a liability broader than that of the owner of real estate encumbered by a lien put on it by a predecessor owner, for if the latter sells the land, his assets are quit entirely of all liability; whereas if the transferee corporation in the sort of situation we are discussing, disposes of the assets, it nevertheless remains liable to the creditors of its predecessor to the full extent of the value of the property received.

Such being the legal aspects of the situation, the fact that the debts charged against the defendant are derivative ones, so to speak, cannot remove them as factors in considering the question of insolvency under our statute. They are debts which the defendant must pay either to free its property from an equitable lien, or, if the liened property has been disposed of, in order to discharge itself from immediate liability to the extent of its value.

It makes no difference, therefore, for the present purposes, that the debts were not contracted by the defendant but were originally incurred by the defendant's predecessors in title.

All that has been just said is predicated on the assumption that the circumstances attending the transfers of assets to the defendant do not amount to an ordinary sale whereby the selling corporation receives and holds the consideration paid. See *Ozan Lumber Co., et al., v. Davis Sewing Machine Co.,* decided by Judge Morris in this district and reported in (*D. C.*) 284 *F.* 161; *Id.* (*D. C.*) 285 *F.* 395, which holds that where that is the case, the transferee corporation is under no liability to the transferror's debtors. I am assuming, though not deciding, that such is not the case here; that on the contrary, the circumstances of this case disclose transactions in the form of sales, but which were in substance nothing more than schemes by which the stockholders of a selling corporation turned over the assets to another corporation, leaving creditors unpaid, and, as

stockholders in the transferee, continued to be the equitable owners of the transferred assets.

I come now to an examination of the debts for which the defendant is liable and the question of its ability to meet them.

In the course of certain litigation in the United States District Court (New Hampshire) in which relief was sought against frauds alleged to have been committed by the president of the defendant company, in which the defendant here was one of the parties defendant there, a temporary receiver was appointed for the defendant's assets located in that jurisdiction. Its principal physical assets were located there. The receiver operated the defendant's business to a limited extent. The complainant has shown by that receiver what claims have been filed in the New Hampshire proceedings. They are as follows:

Note, Chase National Bank ................$ 14,165.88
Note, First National Bank, Concord, N. H. .... 10,000.00
Mortgage note, Plymouth Guaranty Savings Bk. 2,000.00
Todd & Boyer & Son, rent .................. 2,160.50
Price, Waterhouse & Co., audit. ............. 1,141.41
New York Telephone Co. ................... 47.89
State of Delaware, taxes ................... 107.42
The Hardinge Co. .......................... 301.80
Allen Branin ............................. 70,843.00
White Mountain Tel. & Tel. Co. ............. 26.86
Western Union Tel. Co. ................... 3.79
Boston & Maine R. R. Co. .................. 1,116.36
Boston & Maine R. R. Co. .................. 453.45
Robert M. Gay, Inc. ....................... 2,000.00
Thomson & Hoague ....................... 323.64
                                          _____
                                          $104,692.00

I do not understand the New Hampshire receiver to mean to testify that all these claims are properly due. He

simply states that they have been presented and filed in the New Hampshire cause.

From the total is to be deducted the Branin claim of $70,843.00, because it appears beyond doubt that this claim is seriously disputed. The New Hampshire receiver joins in questioning its validity. Branin once instituted suit for it and discontinued the same.

This leaves the total remaining claims shown by the complainant as $33,849.00. The Delaware tax claim has been paid, thereby reducing the remaining total to $33,-741.58.

With respect to the debts entering into this remaining total, the defendant protests all of them except the small claims of the New York Telephone Company, the White Mountain Telephone and Telegraph Company and the Western Union Telegraph Company. These total only $78.64.

The balance of the remaining total of $33,741.58 is repudiated by the defendant as owing by it on the general ground that the debts included in it were not contracted by the defendant. This general objection I have already disposed of and need not notice any further.

But objections are otherwise raised to some of the items entering into the remaining total just mentioned. These objections are based not on the principle of the defendant's nonliability for its transferrors' debts, but on the proposition that assuming such liability to exist, yet the claims are not debts owed by any of the defendant's transferrors. If the transferrors are not indebted, of course the defendant transferee cannot be. The items which the defendant insists are not due from any of its transferrors are the following:

The Hardinge Company, $301.80. There seems to be a genuine dispute over the validity of this claim. It represents a freight charge which one of the defendant's transferrors claimed should have been paid by the Hardinge Company for the shipment of machinery. The consignee

(defendant's transferror) was compelled to pay the freight and deducted the amount from the bill when it paid for the machinery.

The Robert M. Gay, Inc., $2,000. This claim is based on an alleged breach of contract on the part of one of the defendant's transferrors. Without reviewing the facts shown, it is sufficient to say that enough appears to warrant the view that the claim is doubtful. It is enough so to justify its contest. It would hardly do to hold the defendant responsible for it as a matured obligation which it is bound to pay.

Boston & Maine R. R., $1,116.36. This appears to be a claim against Federal Lumber Company, a corporation some of whose assets came eventually though not directly to the defendant. The assets went to one of the defendant's transferrors, which in turn passed them on to the defendant. The Federal Lumber Company, however, according to the evidence, appears to have made a straight out sale of the assets, received the consideration therefor, retained the consideration and is now doing business. The claim does not appear to be a well-founded one against the defendant. *Ozan Lumber Co., et al., v. Davis Sewing Machine Co., supra.*

Boston & Maine R. R., $453.45. This appears to be a claim for freight chargeable against Joseph A. Rogers, the defendant's president, for the carriage of materials shipped to him personally. That is what the only evidence bearing on the claim shows.

These claims total $3,871.61. They are shown either to be not chargeable against the defendant or so seriously in dispute as not to be counted as debts due from it in this inquiry into the defendant's ability to meet its current obligations.

Deducting them from the figure of $33,741.58, we have a balance remaining of total claims assertable against the defendant of $29,869.98.

There are other deductions which the defendant contends should be made from this balance. But I take no notice of them either because they are not sufficiently supported or they are negligible in amount.

I conclude then that the defendant owes a total of $29,-869.98, which is beyond dispute. This conclusion, I desire to make plain, is based solely on what evidence there is before me. Fuller evidence may show it to be wrong. It is also based on the assumption that the defendant is liable as transferee of the assets of debtor transferrors. I am assuming, without deciding, that the facts are such as to furnish the basis out of which the law raises a liability against the defendant in the manner hereinbefore discussed.

What are the defendant's assets? It has, according to the defendant, liquid assets totalling $57,816.34. Of this sum $1,537.23 is cash on hand; notes receivable, $433.75; mica and feldspar readily salable, $15,845.13; and timber on the stump, $40,000. It appears to me that except for the cash and notes receivable, these assets are not very readily convertible into cash. They may, however, be capable of yielding cash if reasonable time were employed in the endeavor to liquidate them.

The defendant's president values its real estate, much of it containing mineral deposits, at $1,500,000. This may be a fanciful valuation. It is to be observed that Judge Morris of the District of New Hampshire was of the opinion that it is. He was of the opinion that the defendant's properties could be sold for $500,000. He stated this conclusion after what must have been a most laborious examination of the defendant's assets and affairs. Enough of the record of the cause in his court is before me to show that such a degree of industry and painstaking study was devoted by him to the defendant's affairs as to command from others a great respect for his conclusions.

I shall proceed on the assumption that it is entirely safe to say that the defendant has physical properties worth

at least $500,000. Now that being so, it is exceedingly difficult for me to say that the existence of $29,000 of liabilities discloses a condition of insolvency. Certainly the defendant, if it were free to manage its affairs, ought to be able to finance that liability. Even if what the defendant is pleased to tag as "liquid assets" of $57,000.00 could not be immediately made to yield the necessary $29,000.00 of cash necessary to pay the debts, surely it should be a matter of no difficulty to raise the necessary cash, with $500,-000.00 of real estate available as security.

The language of Vice-Chancellor Fallon, of New Jersey, in a recent case impresses me as particularly appropriate here. I refer to *Auburn Button Works v. Perryman Electric Co.*, 107 *N. J. Eq.* 554, 154 *A.* 1, 3. There as here the defendant in a receivership cause had liabilities due which its cash position was unable to meet. Judgments had not been obtained against it; no execution levies were therefore threatened. Its ratio of liabilities to security resources was not much if any less than that found in the instant case. He observed:

"It appears to me that if the defendant was pressed by its creditors for payment of bills and accounts payable, and was unable to realize upon bills and accounts receivable a sum of money sufficient to meet its creditors' demands, it could readily raise money with which to meet all of its pecuniary liabilities by means of its available assets and an honest use of its credit."

And so here, also, it appears to me that the defendant is amply able to tide itself over whatever difficulties may now beset it because of the liabilities above stated.

Insolvency within the meaning of our statute has not been made out, for the defendant's situation is such that whatever debts are properly chargeable against it can be taken care of by the defendant's use of its credit resources. To do so would not seriously impair its condition.

In listing the defendant's liabilities, I am not unmindful of the charge placed by the New Hampshire decree upon the defendant's properties of $25,395.50 to cover the ex-

penses incurred and the professional services secured by the complainant in the New Hampshire cause. This however is more than offset by two liens in the defendant's favor impressed by that decree upon properties which according to the evidence before me are well worth the liens imposed. These liens in favor of the defendant amount to $47,000.00.

It may be, as claimed by the complainant, that this defendant needs to be reorganized; that owing to its capital burden, it cannot look forward to a satisfactory earning career. Judge Morris, of the New Hampshire District, is of the same opinion. But even so, the desirability of a reorganization can have no relevancy as disclosing insolvency.

The bills in both cases will be dismissed.