ELLEN KRATKY, BY ELLEN WITTHANS, GUARDIAN OF HER ESTATE, v. WOODBURY G. ANDREWS AND OTHERS.[1]

July 18, 1947.

No. 34,441.

[1]Reported in 28 N. W. (2d) 624.

*John H. Horeish* and *Eugene F. Matthews,* for appellant.

*George G. Chapin* and *Francis J. Nahurski,* for respondents Ruth M. and Peter J. Stolurow.

PETERSON, JUSTICE.

This is an action to determine adverse claims to real estate.

The questions for decision are: (1) Whether a foreign corporation organized for the purpose of buying, selling, and dealing in real estate and interests therein has the power to acquire a vendee's interest under a contract for deed, where prior to such attempted acquisition the corporation's charter has become "void" and its powers "inoperative" under the laws of the state of its incorporation as a consequence of nonpayment of taxes, but under such law the corporation was continued during a three-year extended period for the purpose of winding up, and not for the purpose of continuing the business for which it was organized; (2) whether a transaction by a corporation is presumed to be incidental to winding up, where the transaction is one that it was authorized to transact as a part of the regular business for which it was organized; and (3) whether respondent may raise for the first time on appeal the point that she is protected as a bona fide purchaser or assignee by the recording act.

The facts giving rise to the question are somewhat complicated. In October 1931, defendant Woodbury G. Andrews, as owner, executed a contract for deed of the real estate in question to defendant Kintzinger, who assigned the contract to defendant Paulson, who in turn assigned it to defendant Mid-State Investment Company. Mid-State undertook to deal with the vendee's interest under the contract for deed as if it were one in fee. On April 6, 1933, Mid-State, as vendor, executed a contract for deed to Paulson as vendee, under which she was to pay to Andrews under the original contract for deed the sum of $20,000 in $75 monthly install-

ments and to Mid-State the sum of $4,000 in $25 monthly installments. Paulson assigned this contract to plaintiff.

On April 6, 1933, plaintiff, the same as Kintzinger did as vendee under the Andrews-Kintzinger contract and as Paulson did as assignee thereof, entered into possession of the premises and has ever since received the rents, paid taxes, and performed the contracts between Andrews and Kintzinger and Mid-State and Paulson.

On April 12, 1933, by two separate instruments, Mid-State did "sell, assign and transfer" to I. and M. Land Company its interest under the Andrews-Kintzinger and the Mid-State-Paulson contracts.

In 1927, I. and M. was incorporated under the laws of Delaware for the purpose of buying, selling, and dealing in real estate and interests therein. On July 27, 1928, it qualified to do business in this state. Thereafter, about three months prior to the acquisition of the vendee's interest, I. and M.'s charter became void and its powers inoperative by reason of the fact that it did not pay for two consecutive years taxes assessed against it. On January 19, 1933, the governor of Delaware, pursuant to statute, by proclamation declared I. and M.'s charter "repealed." Its charter has not been reinstated, although there is statutory authorization for such action in certain cases.

On January 8, 1934, I. and M. assigned—it did "sell, assign and transfer"—to defendant Ruth M. Stolurow the contracts for deed.

Plaintiff made two $25 monthly payments to Stolurow as I. and M.'s assignee. No claim is made that an estoppel has resulted or that plaintiff is otherwise precluded thereby from assailing the validity of the assignments to I. and M. and the one by it to Stolurow.

On March 28, 1942, Mid-State gave plaintiff a quitclaim deed whereby it quitclaimed and conveyed to her all its interest in the property.

It is conceded that at the opening of the trial (October 7, 1946) there was due to Andrews under the contracts $5,085.45. The contest here, as it was below, is between plaintiff and defendant Stolurow. Plaintiff's contention is that Stolurow acquired no interest

under the assignment of the contracts to her by I. and M. for the reason that because of the forfeiture of its charter it lacked legal capacity both to take and to transfer any property or contract for an interest therein. Stolurow contends that I. and M. was authorized during the three-year extended period for winding up to acquire the contracts in question and that it should be presumed under the circumstances that the acquisition was for purposes of winding up.

In addition, Stolurow attempts to raise for the first time in this court, without having raised it in the pleadings, evidence, or proceedings below, the question whether she is entitled under the recording act to protection from the alleged forfeiture of I. and M.'s charter and the consequences thereof as a purchaser or assignee in good faith, because of the fact that there was filed with the register of deeds prior to the assignment to her a certificate showing that I. and M. had complied with our laws governing foreign corporations and that it was entitled to do business in this state for a period of 30 years from July 27, 1928.

Except as to the claim of being entitled to protection as a bona fide purchaser or assignee in good faith in reliance upon the records, with respect to which there was no ruling, the trial court held and decided in accordance with Stolurow's contentions. Plaintiff appeals.

■ The law of the state of incorporation governs as to dissolution of a corporation and its right after dissolution to exercise its corporate functions anywhere. Dissolution of a corporation and deprivation of the right to exercise its corporate powers by the law of the state of incorporation will be effective in another state. Gulledge Bros. Lbr. Co. v. Wenatchee Land Co. 122 Minn. 266, 142 N. W. 305, 46 L.R.A.(N.S.) 697; Restatement, Conflict of Laws, §§ 158, 165. In the Gulledge case, we said (122 Minn. 271, 142 N. W. 307):

"* * * If it [a foreign corporation] is actually dissolved by proper proceedings in its home state, its existence is ended and it could not thereafter * * * exercise any corporate functions anywhere."

Hence, the question as to whether I. and M.'s corporate existence and powers had been terminated is to be determined by the law of Delaware as that of the state of its incorporation.

■ Under the statutes of Delaware as construed by the courts of that state, I. and M. was without power to take under the assignments from Mid-State and to make an assignment to Stolurow of the contracts which Mid-State attempted to assign to it.

Under § 74[2] of Delaware Laws Affecting Business Corporations, Annotated, it is provided that the charter of a corporation incorporated under the law of Delaware failing to pay for two consecutive years the taxes assessed against it *shall be void* and all powers of the corporation declared *inoperative,* unless the state tax board for cause grant further time for payment of the tax or taxes. Section 75 provides that the governor shall issue a proclamation declaring "repealed" the charter of any corporation which shall not pay such taxes for two years next preceding report thereof to him. Section 77 makes it a misdemeanor for any corporation or person to exercise or to attempt to exercise the powers of any corporation after the governor has by proclamation declared its charter repealed.

Section 40,[3] so far as here material, in effect provides that a corporation expiring by its own limitation or "otherwise dissolved"

---

[2]"Sec. 74. If any corporation, accepting the provisions of the Constitution of the State of Delaware and coming under the provisions of the General Corporation Law of this State, or any corporation which has heretofore filed or may hereafter file a certificate of incorporation under the provisions of the said law, shall for two consecutive years neglect or refuse to pay the State any franchise tax or taxes, which has or have been, or shall be assessed against it, or which it is required to pay under the provisions of this Article, the charter of such corporation shall be void, and all powers conferred by law upon such corporation are declared inoperative, unless the State Tax Board shall for good cause shown to it, give further time for the payment of such tax or taxes, in which case a certificate thereof shall be filed by the said Board in the office of the State Tax Department stating the reason therefor."

[3]"Sec. 40. All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the

shall be continued for a period of three years for the purpose of winding up and liquidating its business, but not for the purpose for which the corporation was organized.

A corporation whose charter has become void and whose powers have become inoperative by reason of nonpayment of taxes has been otherwise dissolved within the meaning of § 40. McKee v. Standard Minerals Corp. 18 Del. Ch. 97, 156 A. 193.

Where a corporation has expired by its own limitation or its charter has become void and its powers inoperative by reason of nonpayment of taxes, the powers of the corporation are terminated. It is legally dead and without power to perform any of its corporate functions. Wuerfel v. F. H. Smith Co. (Del. Ch.) 13 A. (2d) 601; Broza v. Aluminum Cleaner Corp. 18 Del. Ch. 305, 159 A. 430; Harned v. Beacon Hill Real Estate Co. 9 Del. Ch. 232, 80 A. 805, affirmed, 9 Del. Ch. 411, 84 A. 229.

In McBride v. Murphy, 14 Del. Ch. 242, 124 A. 798, affirmed, 14 Del. Ch. 457, 130 A. 283, the question arose whether a charitable corporation, the residuary legatee, whose charter had expired by its own limitation could during the three-year extended period take a devise of real property and thereafter convey it. The court held that under § 40 the corporation's charter had become void and its powers inoperative; that it lacked power to take property by devise; that, because it lacked the power to take the property, title remained in the testator; and that the testator's heirs at law were therefore entitled to it. The court said (14 Del. Ch. 250, 248, respectively, 124 A. 801):

"It is impossible for me to escape the conclusion that so far as the right to acquire the property under the residuary clause in question is involved, the old corporation was as dead as a natural person could be on the date when the testator's will became effective,

purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock but not for the purpose of continuing the business for which said corporation shall have been established; * * *."

and that therefore it could take no interest thereunder. * * * *Taking nothing itself, it could convey nothing by its deed to the new corporation."* (Italics supplied.)

"* * * That section does grant to expired corporations a continued existence for three years. But the additional three years of life is granted for only the limited purpose of prosecuting and defending suits and of enabling the corporation gradually to settle and close its business, to dispose of and convey its property and to divide its capital stock. In order that there might be no implication of powers beyond those specifically named, the section proceeds to deny to any corporation to which it applies any right to continue as a corporation for the purpose of conducting the business for which it was established."

The rule of the McBride case was approved and applied in the McKee case, where a corporation whose charter had become void and powers inoperative under § 74 by reason of nonpayment of taxes was held to lack power to perform any corporate function for which it had been incorporated. The McKee case holds also that, even though a corporation may under certain circumstances have its charter revived, it is in effect legally dead until that is done.

Under the law of Delaware, I. and M. had been dissolved at the time Mid-State assigned to it the contracts in question; I. and M.'s charter had become void and its powers inoperative by reason of nonpayment of taxes; and it lacked legal capacity both to take an assignment of the contracts and to make an assignment of them. The disability continued during the three-year extended period for winding up. By taking the assignments, I. and M. thereby engaged during such three-year period in the business for which it was organized. Power so to do was expressly withheld by § 40. The assignments from Mid-State to I. and M. were wholly ineffective to transfer the contracts to I. and M., and, because that is true, Mid-State continued after the assignments were made to be the owner of the contracts the same as if no assignments had ever been made or attempted. McBride v. Murphy, *supra.* That being true, Stolurow did not acquire any interest in the contracts by the assignments to

her by I. and M. for the reason stated in the McBride case. Her assignor having taken nothing, it could assign nothing.

Because the validity of the assignments from Mid-State to I. and M. depends upon whether I. and M. was in existence and whether its corporate power to take the assignments continued, and because the existence and continuance of its powers are to be determined by the law of Delaware as the state of its incorporation, the law of Delaware will be applied here in determining the validity of the assignments. The assignments, being void under the law of Delaware, are void here, as they are everywhere. This is a well-settled rule of conflict of laws. In Restatement, Conflict of Laws, § 160, the rule is thus stated:

"A corporation is prohibited from doing in another state any act during a period of winding-up, preparatory to dissolution, which it is prohibited from doing by the state of incorporation."

■ The trial judge indulged a presumption of the legality of the assignments by Mid-State to I. and M. notwithstanding the fact that all the facts concerning the transaction had been disclosed. It appears that I. and M. purchased the contracts like any other person engaged in the business of dealing in such contracts. The language of the instruments on their face shows a *sale* by Mid-State to I. and M. The abstract of title received in evidence shows that I. and M. had no interest in or connection with the property or the contracts prior to the assignments. No possible reason is suggested for I. and M.'s purchasing the contracts, except that it was engaged in that business. There is no suggestion anywhere that it was winding up its business or attempting to do so. Everything else aside, the plain and undeniable fact is that by taking the assignments I. and M. engaged in the very business for which it was organized. The transaction is plain upon its face. As the Delaware court said in McBride v. Murphy, 14 Del. Ch. 249, 124 A. 801, *supra,* concerning the transfer there involved:

"* * * It [the taking by the corporation] would be rather the exercise of power granted by the original charter to acquire prop-

erty, and, instead of contemplating a winding up, it would look forward rather to a continuance of the business first authorized."

A presumption to supply a fact—here that of legality—will not be indulged where the facts are known. A presumption will not be indulged to sustain an illegal act. See, 31 C. J. S., Evidence, § 114; 20 Am. Jur., Evidence, § 158. The transaction here, on its face being one for which the corporation was organized, was a prohibited one. There is no necessity for discussing cases holding that under certain circumstances where all the facts have not been made to appear there is a presumption of legality of a corporate acquisition. Here, the facts appear, and they plainly show illegality.

■ A party cannot raise for the first time on appeal a question not litigated at the trial or passed on by the trial court. It must be obvious that Stolurow's claim, that she is protected by the recording act against plaintiff's claims here as a purchaser or assignee in good faith relying upon the records in the register of deeds' office (we do not intimate whether or not her claim has any merit), depends on fact questions with respect to which plaintiff was entitled to be heard, but was not. For us to pass on the point would involve not only deciding a question not litigated or decided below, but doing so without giving plaintiff an opportunity to be heard on the fact questions involved. This we cannot do.

Our conclusion is that Stolurow has no interest in the land in question; that the assignments of the contracts under which she claims were absolutely ineffective to transfer the contracts to her, for the reason that her assignee, I. and M., was incapable either of taking under the assignments from Mid-State or transferring any interest Mid-State attempted to assign to it; and that plaintiff is the owner of the property as assignee of the contracts for deed, subject to payment of the amount due to Andrews.

Reversed with directions to amend conclusions of law and order for judgment in accordance with opinion.