**L.O. BREND and Shirley A. Brend,
Plaintiffs and Appellees,**

v.

**DOME DEVELOPMENT, LTD., a corporation, Wayne Wikenheiser, Vickie Wikenheiser, Terri Lee Brend, Dome Development, Inc., Linda Skogen, Inter–Mountain West Management Corporation, and all other persons unknown claiming any interest in, or lien or encumbrance upon, the property described in the complaint, Defendants,**

and

**Ronald Voller and Verla Voller, Defendants and Appellants.**

Civ. No. 870194.

Supreme Court of North Dakota.

Feb. 2, 1988.

Timothy D. Lervick, of Lundberg, Nodland, Lucas, Schulz & Lervick, Bismarck, for plaintiffs and appellees.

Robert O. Wefald, of Wefald Law Office, Bismarck, for defendants and appellants.

VANDE WALLE, Justice.

Ronald and Verla Voller appealed from a partial summary judgment quieting title in land to L.O. and Shirley Brend. We affirm.

On June 18, 1975, the Brends purchased the land on a contract for deed from Dome Development, Ltd., a North Dakota corporation, through its president, Ronald Leech, and its secretary, Leonell W. Fraase. However, the Brends did not record the contract for deed until July 10, 1986. During the interim, Wayne and Vickie Wikenheiser became president and secretary respectively of Dome and on October 25, 1985, they executed a warranty deed conveying the same land to the Vollers. That warranty deed was recorded on November 1, 1985. The Wikenheisers' signatures were notarized by Linda Skogen who acknowledged that Wayne and Vickie were the president and secretary respectively of Dome.

On February 11, 1980, the North Dakota Secretary of State issued a certificate of dissolution of Dome after its president, Wayne Wikenheiser, submitted articles of dissolution stating that "[a]ll debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefor" and that "[a]ll remaining property and assets of the corporation have been distributed among its shareholders, in accordance with their respective rights and interests." Nevertheless, Dome remained the record owner of the land until the Vollers' warranty deed was recorded.

The Brends commenced this quiet-title action alleging that the Vollers' warranty deed was void because Dome was not a legal entity when that deed was executed.

They also alleged that the Wikenheisers fraudulently executed that warranty deed with intent to defraud them and that Skogen negligently acknowledged that the Wikenheisers were officers of Dome. The Brends sought to have title quieted in them subject to the interest of Terri Lee Brend by virtue of a mortgage between them and Terri which was recorded on July 10, 1985. They also sought general damages from the Wikenheisers and Skogen and punitive damages from the Wikenheisers.

In their answer the Vollers sought to quiet title in their name, alleging that their warranty deed was valid and that the Brends were guilty of laches. Terri's answer generally supported the Brends' claim to the land. The Wikenheisers' answer generally supported the Vollers' claim to the land. Skogen's answer denied liability and asserted that if she was liable to the Brends, the Wikenheisers were liable to her because of their misrepresentations.

The district court determined that the Vollers' warranty deed was void as a matter of law and granted summary judgment quieting title in the Brends subject to Terri's interest. The court noted that "remaining issues such as damages and the cross-claims of the defendants remain open for eventual determination" and entered an order under Rule 54(b), N.D.R.Civ.P. that there was no just reason why final judgment should not be entered quieting title in the Brends.

Our review requires an analysis of the effect of a dissolved corporation's conveyance of land, and the Brends' interest in the land vis-a-vis the Vollers' interest.

A corporation is a creature of statute, acquiring its existence and authority to act from the State. *State v. J.P. Lamb Land Co.*, 401 N.W.2d 713 (N.D. 1987). Generally, in the absence of a contrary statute, a conveyance or contract by a dissolved corporation is void and of no effect. *New Hampshire Fire Insurance Co. v. Virgil & Frank's Locker Service, Inc.*, 302 F.2d 780 (8th Cir.1962); *Hearth Corporation v. C–B–R Development Co., Inc.*, 210 N.W.2d 632 (Iowa 1973); *Clover-*

*fields Improvement Association, Inc. v. Seabreeze Properties, Inc.,* 32 Md.App. 421, 362 A.2d 675 (1976); *Kratky v. Andrews,* 224 Minn. 386, 28 N.W.2d 624 (1947); *Land Clearance For Redevelopment Authority v. Zitko,* 386 S.W.2d 69 (Mo.1964); *James v. Unknown Trustees, Etc.,* 203 Okl. 312, 220 P.2d 831 (1950); *Mount Carmel R. Co. v. M.A. Hanna Co.,* 371 Pa. 232, 89 A.2d 508 (1952). See Patton on Titles § 405 (1938); 19 Am.Jur.2d, Corporations § 2891 (1986); 16A Fletcher Cyclopedia Corporations, Ch. 65, § 8137 (1979).

That general rule is supported by our statutory provisions pertaining to corporate dissolution which were in effect when Dome was dissolved in 1980.

N.D.C.C. § 10–21–05,[1] provided:

*"10–21–05. Effect of statement of intent to dissolve.—Upon the filing by the secretary of state of a statement of intent to dissolve,* whether by consent of shareholders or by act of the corporation, *the corporation shall cease to carry on its business,* except insofar as may be necessary for the winding up thereof, but its corporate existence shall continue until a certificate of dissolution has been issued by the secretary of state or until a decree dissolving the corporation has been entered by a court of competent jurisdiction." [Emphasis added.]

N.D.C.C. § 10–21–12 provided, in part:

**1.** Ch. 10–21, N.D.C.C., was repealed by S.L.1985, Ch. 147, § 24, and was generally replaced by the current provisions of Ch. 10–19.1, N.D.C.C. A provision similar to Section 10–21–05, N.D.C.C., is currently found in Section 10–19.1–109(2), N.D.C.C.

**2.** Section 10–21–11, N.D.C.C., provided:
  *"10–21–11. Articles of dissolution.—If* voluntary dissolution proceedings have not been revoked, then when all debts, liabilities, and obligations of the corporation have been paid and discharged, or adequate provision has been made therefor, and all the remaining property and assets of the corporation have been distributed to its shareholders, articles of dissolution shall be executed in duplicate by the corporation by its president or a vice president and by its secretary or assistant secretary, and verified by one of the officers signing such statement, which statement shall set forth:

"Upon the issuance of such certificate of dissolution the existence of the corporation shall cease, except for the purpose of suits, other proceedings, and appropriate corporate action by shareholders, directors, and officers."

The Vollers did not present any factual basis by affidavit or otherwise to establish that Dome's purported conveyance to them more than five years after it was dissolved was for winding up the corporation or for any other appropriate corporate action.

When Dome was dissolved it was required to comply with Section 10–21–11, N.D.C.C.,[2] in order to file its articles of dissolution and to receive a certificate of dissolution. That section required that, after payment of debts, all of the corporation's remaining assets must be distributed to its shareholders. However, Dome remained the record owner of the land until the Vollers recorded their warranty deed.

When the Vollers received their warranty deed, Section 10–19.1–126, N.D.C.C., provided:

*"10–19.1–126. Omitted assets.* Title to assets remaining after payment of all debts, obligations, or liabilities and after distributions to shareholders may be transferred by a court in this state."

The language of that statute permitted title to any assets omitted from distribution to the shareholders to be transferred by a

"1. The name of the corporation.
"2. That the secretary of state has theretofore filed a statement of intent to dissolve the corporation, and the date on which such statement was filed.
"3. That all debts, obligations, and liabilities of the corporation have been paid and discharged or that adequate provision has been made therefor.
"4. That all the remaining property and assets of the corporation have been distributed among its shareholders in accordance with their respective rights and interests.
"5. That there are no suits pending against the corporation in any court, or that adequate provision has been made for the satisfaction of any judgment, order, or decree which may be entered against it in any pending suit."
The current law is similar and is found at Section 10–19.1–113, N.D.C.C.

court. In this case Dome's purported conveyance to the Vollers was not done by court intervention, and that conveyance did not comply with that statute.

When the Vollers received their warranty deed Section 10–19.1–104(3), N.D.C.C., provided:

"3. Confirmatory deeds, assignments, or similar instruments to evidence a sale, lease, transfer, or other disposition may be signed and delivered at any time in the name of the transferor by its current officers or, if the corporation no longer exists, by its last officers."

It is undisputed that Dome's conveyance to the Vollers occurred after Dome was dissolved. The Vollers presented no evidence by affidavit or otherwise to establish that that transaction involved a confirmatory deed to effectuate a prior transaction.

Under these circumstances, we conclude that the warranty deed received by the Vollers from Dome was void as a matter of law and that the Vollers did not acquire any interest in the land by virtue of that deed. While the Vollers may have been entitled to record that warranty deed pursuant to Section 47–19–41, N.D.C.C., that deed did not convey any interest to them because Dome was dissolved at the time of the conveyance. Any factual issues about laches on the part of the Brends or the Vollers' good faith are not material because the Vollers did not acquire any interest in the land through the warranty deed from Dome. Because the Vollers' claim was predicated on that warranty deed, the

district court correctly quieted title in the Brends subject to Terri's interest.

Our decision does not upset any settled property principles. The Vollers cited Title Standard 1.17 [3] of the Title Examination Standards of the State Bar Association of North Dakota, and argued that the trial court's ruling "dramatically expands the duties and requirements of title examiners in North Dakota." That title standard was based on Section 10–07–03, N.D.C.C.,[4] a statute repealed in 1983 but replaced by a greatly broadened version at Section 47–10–05.1, N.D.C.C.[5] See 1983 N.D.Sess. Laws Ch. 502. Section 47–10–05.1, N.D.C.C., was not cited to us in this appeal, but our decision does not overlook it or discredit the related title standard.

As we have demonstrated above, it is not a novel proposition that former officers of a dissolved corporation have no power to convey property, except as authorized by statute. While title examiners, removed from immediate parties, may be justified in relying on a corporate conveyance, acknowledged under oath and recorded in the chain of title [see Sections 47–19–20 and 47–19–34, N.D.C.C.], this decision once again points up that those who deal with "corporate officers" take the risk of reliability of those with whom they deal. See Sections 3–04–01, 3–04–02 and 10–19.1–29, N.D.C.C. A legal presumption may be useful, but it does not function "if facts giving rise to [the] presumption are [not] established...." Rule 301(a), N.D.R.Ev. There was no corporation, so there was no officer

---

**3.** "An examiner may presume the validity and authority for execution of corporate deeds, mortgages and other conveyances of real estate when executed by the president and secretary or the president and cashier." North Dakota Standards of Title, Source of Title and Conveyances, § 1.17 (1978) (amended 1980).

**4.** *"10–07–03. Officers presumed to be authorized to execute conveyances.*—It shall be presumed that the president and secretary or the president and cashier of any foreign or domestic corporation may execute and acknowledge, in its behalf, deeds, mortgages, or other conveyances of real estate, and that any officer of any such corporation may execute and acknowledge, in its behalf, assignments, re-

leases, or satisfactions of mortgages or other liens upon real or personal property."

**5.** *"47–10–05.1. Presumption of corporate authority of officers—Application.* An officer of any foreign or domestic corporation is presumed to have the power and authority to execute and acknowledge, in its behalf, any instrument granting, conveying, or otherwise affecting any interest in or lien upon any property of the corporation, including contracts, mortgages, deeds, plats, replats, easements, rights of way, options, dedications, restrictions, releases, and satisfactions. Any such instrument executed by an officer of the corporation prior to July 1, 1983, and otherwise proper, is valid and effective."

of a corporation presumed empowered to act.

The partial summary judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.