**In re Richard C. MORRIS, Robert E. Morris, Debtors.**

**Gibson D. KARNES, Trustee, Plaintiff,**

**v.**

**F.C. MORRIS & SONS, INC., Robert E. Morris, Richard C. Morris, W. Herbert Bayley, as Trustee of Richard C. Morris Children's Trust, W. Herbert Bayley, as Trustee of Robert E. Morris Children's Trust, Ivan A. Elliott, Jr., as Trustee of Richard C. Morris Children's Trust, Ivan A. Elliott, Jr., as Trustee of Robert E. Morris Children's Trust, John Hancock Mutual Life Insurance Company, First Bank & Trust Co., Mt. Vernon, Illinois, as Trustee under the provisions of a Trust Agreement known as Trust No. 15451 and Trust No. 15330, Intra Illinois, Inc., Intra, USA, Inc., Charles York, Mike York, Carl Rexing, Jay Morris, Mark Morris, Allen Morris, Robert Morris, Jr., Beth Morris, Ellen**

Coggshell, Susan Kline, First National Bank of Wayne City, Nattier Fuels, Inc., the Hamilton County Bank of Mc-Leansboro, Wabash Valley Service Co., Farm Air, Inc., Edna Blackwell, Fabick Tractor Company, Unknown Owners and Nonrecord Claimants, Defendants.

Bankruptcy Nos. 89–41056, 89–41059.
Adv. Nos. 90–0055, 90–0056.

United States Bankruptcy Court,
S.D. Illinois.

Nov. 24, 1992.

Terry Sharp, Mt. Vernon, IL, for Trustee.

James E. Ford, Benton, IL, for debtors-defendants.

Mark Ballard, Mt. Vernon, IL, John D. Lien and Joan Kubalanza, Chicago, IL, for John Hancock Life Ins. Co.

James E. Dull, Mt. Vernon, IL, for 1st Natl. Bank & Trust of Wayne City, IL.

James Van Winkle, McLeansboro, IL, for Intra Ill., Inc., Mike & Charles York & Intra USA, Inc. and 1st Bk & Trust Co.

Curtis Barnes, Galatia, IL, for W. Herbert Bayley.

Darrell Dunham, Murphysboro, IL, for Morris Children's Trusts.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether a dissolved corporation, of which the debtors were shareholders, validly conveyed its real estate following dissolution or whether, as the trustee contends, the property passed to the debtors as owners of the defunct corporation's assets so as to become part of

their bankruptcy estates.[1] The trustee has filed a complaint for ejectment and declaratory relief, asserting that because the debtors' corporation had been involuntarily dissolved at the time of its purported conveyances of real estate, the conveyances were invalid and the debtors hold title to the property as shareholders of the dissolved corporation. Intra Illinois, Inc., and Intra USA, Inc., ("Intra"),[2] which purchased the property from the dissolved Iowa corporation, assert that the conveyances were authorized under an Iowa statute governing the "winding up" of corporations. Intra contends, therefore, that it acquired good title to the real estate in question and that the trustee's complaint should be denied.

The facts are undisputed. Debtors Richard and Robert Morris are brothers who, along with their father, owned 100% of the stock of F.C. Morris & Sons, Inc. ("Morris, Inc."), a corporation organized under Iowa law. From the time of its incorporation in 1966 until 1973, Morris, Inc. conducted a farming operation in Iowa. In 1973, the corporation registered to do business in Illinois and purchased approximately 3,000 acres of land in Hamilton County, Illinois. Morris, Inc. thereafter farmed this land with the debtors serving as officers of the corporation.[3]

On November 21, 1977, Morris, Inc. was involuntarily dissolved by the Iowa Secretary of State for failure to pay its annual fee or file its annual report. The debtors were unaware of this fact, and the corporation did not wind up its affairs as contemplated by Iowa statute. Instead, Morris, Inc. continued to operate its farming business as a corporation.

On December 5, 1978, the debtors as officers of Morris, Inc. executed a mortgage on the farm to John Hancock Mutual Life Insurance Company ("Hancock") to secure a $3 million loan to the corporation. Subsequently, in December 1979, the corporation sold three separate parcels of land totaling approximately 800 acres to individuals not involved in this litigation.

On February 10, 1981, Morris, Inc. conveyed 1,990 acres of the remaining land to an Illinois land trust, whose beneficiary was Intra Illinois, Inc. The warranty deed from Morris, Inc. identified the grantor as "a corporation duly organized and existing under and by virtue of the laws of the State of Iowa." Morris, Inc. used a portion of the proceeds from this sale to pay operating expenses and debts of the corporation. The rest of the proceeds were used by debtors Richard and Robert Morris to invest in oil and gas wells, in alcohol fuels, and in other business enterprises unrelated to Morris, Inc.

Morris, Inc. continued to farm the land sold to Intra pursuant to a 10–year farm lease entered into on November 14, 1980.[4] However, it subsequently defaulted on payment of the rent due under the lease, and, in June 1982, Intra served a distraint warrant on Morris, Inc., seizing all the farm equipment of Morris, Inc. and all grain stored on the farm. In September 1982, Morris, Inc. conducted a public auction of its farm equipment and personal property in order to settle Intra's suit for rent and for damages resulting from Morris, Inc.'s improper farming under the lease. On October 22, 1982, part of the proceeds from the sale of equipment were paid to the Internal Revenue Service to satisfy a tax lien against Morris, Inc. and the balance

---

1. The Court previously ordered that the debtors' separate bankruptcy cases be administered jointly. The Court further found that consolidation of the present adversary proceedings was appropriate due to the identity of issues and parties. *See Karnes v. F.C. Morris, Inc.,* Adv. Nos. 90–0055, 90–0056, slip op. 3–4 (Bankr. S.D.Ill. June 13, 1990).

2. Intra Illinois, Inc. and Intra USA, Inc. are related entities and will be referred to collectively as "Intra" except to the extent the context requires otherwise.

3. The debtors' father, F.C. Morris, died in 1973, and the debtors subsequently acquired all the stock of Morris, Inc. Robert Morris became president of the corporation and Richard Morris remained as secretary/treasurer. In December 1976, the debtors transferred approximately 9% of the stock to two trusts for the benefit of their children.

4. At trial, counsel noted that the lease was actually entered into before the conveyance was effected, presumably due to a delay in closing the sale to Intra.

was paid to Intra. Intra also received all the proceeds from sale of the grain seized from Morris, Inc.

On October 22, 1982, Morris, Inc. conveyed the remaining portion of the original farm—approximately 200 acres—to an Illinois land trust for the benefit of Intra USA, Inc. The deed, executed by the debtors as officers of the corporation, also reconveyed the 1,990 acres that had been previously conveyed in trust to Intra Illinois, Inc. Morris, Inc. never again engaged in farming after June 22, 1982. On December 1, 1982, Morris, Inc.'s certificate to do business in Illinois was revoked by the Illinois Secretary of State.

The conveyances to Intra in February 1981 and October 1982 left the Hancock mortgage of record. Intra did not expressly assume the mortgage but made direct payments to Hancock on the mortgage from 1981 to 1985. In July 1986, Intra defaulted on the mortgage payments, and Hancock filed foreclosure proceedings in state court against both Morris, Inc. and Intra.

In September 1986, Intra filed a motion to dismiss the foreclosure action, asserting that the Hancock mortgage was invalid because Morris, Inc. had been legally dissolved at the time of execution of the mortgage. Prior to this time, neither Hancock nor the debtors knew that Morris, Inc. had been dissolved. At the time of the conveyances to Intra in February 1981 and October 1982, Intra, too, was unaware that Morris, Inc. had been dissolved.

On October 26, 1989, while the mortgage foreclosure proceeding was pending, the debtors filed their separate Chapter 7 petitions in bankruptcy. In their schedules, both debtors claimed an interest in the assets of the defunct corporation, Morris, Inc. The trustee of the debtors' estates brought the present adversary proceedings seeking possession of the property and authority to sell it for the benefit of creditors. The trustee subsequently filed a motion for summary judgment. Intra, Hancock, and all remaining defendants have stipulated that no triable issue of fact remains and that summary judgment is appropriate.[5]

The trustee's complaint, alleging that Morris, Inc. lacked capacity as a dissolved corporation to execute either the mortgage to Hancock or the deeds to Intra, raises separate issues of validity of the mortgage and ownership of the property.[6] While these issues are related to the extent they concern the ability of the dissolved corporation to act, the Court has no jurisdiction to determine validity of the mortgage if the real estate was effectively conveyed to Intra and is not property of the debtors' bankruptcy estates.[7] The Court must, therefore, determine whether Morris, Inc. validly conveyed its real estate following dissolution so that no title or interest remained in the debtors as shareholders of the dissolved corporation.

Intra contends that the conveyances were valid even though Morris, Inc. was dissolved in 1977 prior to the conveyances in 1981 and 1982. Intra asserts that the corporation retained the legal capacity to convey real estate under § 102 of the Iowa Business Corporations Act, in effect at the time of the conveyances, which provided that a dissolved corporation "may continue to act for the purpose of conveying title to

---

5. The defendants, while stipulating that "the case is ready to submit to the Court on cross motions for summary judgment," have filed no such motions. In the absence of a cross-motion, the Court may grant summary judgment either sua sponte or by treating the nonmovant's opposition as a cross-motion if, as in this case, the parties had notice that summary judgment was contemplated and had opportunity to respond. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Cool Fuel v. Connett,* 685 F.2d 309, 312 (9th Cir.1982).

6. Specifically, the trustee's four-count complaint seeks ejectment (Count I), a declaratory judgment that the Hancock mortgage is void (Count II), a declaratory judgment that the trustee's rights in the property are superior to both Intra and Hancock (Count III), and an order to sell the real estate (Count IV).

7. The bankruptcy court's jurisdiction to determine validity of liens in an adversary proceeding is limited to liens on property of the estate. *See* 28 U.S.C. § 157(2)(K); *In re Holland Industries, Inc.,* 103 B.R. 461, 465 (Bankr.S.D.N.Y. 1989).

its property, real and personal, and otherwise winding up its affairs." Iowa Code § 496A.102 (1981).[8] Intra contends that this provision, which contains no limitation as to time, must be read according to its plain terms as authorizing the conveyances to Intra despite Morris, Inc.'s status as a dissolved corporation.[9]

The trustee responds that Iowa Code § 496A.102 is inapplicable to this factual situation in which the officers of the dissolved corporation were unaware of its dissolution and continued the business of the corporation without winding up its affairs. While aligning themselves with the trustee, defendants First National Bank of Wayne City ("Bank") and the Morris children,[10] raise an additional argument that § 496A.102 is inapplicable on conflict of laws grounds. The Bank and the Morris children assert that it is inappropriate to apply Iowa law in this action involving Illinois real estate. Rather, they contend, the Court should apply Illinois law—the law of the situs—in determining the capacity of Morris, Inc. to convey good title to the real estate.

## I.

■■■■ Because of the unique nature of land and a state's interest in controlling the use and possession of its land, the validity and effect of a conveyance of land and the nature of the interest conveyed are generally determined by the situs court's own local law. See Eugene F. Scoles and Peter Hay, Conflict of Laws, § 19.1, 19.2 (2d ed. 1992); Restatement (Second) of Conflict of Laws, § 223 (1971) (hereinafter "Restatement 2d of Conflicts"). Thus, issues of the formal validity of instruments conveying title as well as questions concerning delivery and effectiveness of deeds are governed by the law of the situs. In addition, the situs court would usually apply its own local law to determine capacity of the transferor to make a valid conveyance. See Restatement 2d of Conflicts, § 223, cmt. c, at 12–13. However, in determining the capacity of a foreign corporation as transferor, the situs court might apply the local law of the state of incorporation because that state's interest in regulating the corporation's existence and powers is so great as to outweigh the values of certainty and convenience that would be served by application of its own law. Id.

Looking to the situs court here, there appears to be no Illinois case that addresses the issue of which state's law should be applied to determine the capacity of a dissolved foreign corporation to convey Illinois real estate.[11] Illinois courts have, however, recognized the applicability of another state's "winding up" provision in the context of determining a dissolved foreign corporation's capacity to sue or be sued. See Eau Claire Canning Co. v. Western Brokerage Co., 213 Ill. 561, 73 N.E. 430 (1905); Perry v. Western Motor Car Co., 279 Ill.App. 195 (1935); Forcite Powder Co. v. Herdien, 162 Ill.App. 425 (1911). The rationale for this rule is that all corporations derive their life and right to transact business from the state in which they are incorporated. While the manner of doing business in a foreign jurisdiction may be controlled by the statutes of that jurisdiction, the corporation's organization, the

8. Iowa Code c. 496A was repealed in 1989 when the Iowa legislature enacted the New Iowa Business Corporation Act (Iowa Code c. 490). The provision here at issue was not included in the new Act.

9. Defendant Hancock, although opposing Intra on the issue of validity of the mortgage, joins with Intra in arguing that Morris, Inc. conveyed good title to the real estate so that it does not constitute property of the bankruptcy estates.

10. The debtors' children are joined as defendants in the trustee's action both individually and as beneficiaries of the Richard C. Morris

Children's Trust and the Robert E. Morris Children's Trust, which hold approximately 9% of the stock of Morris, Inc. Like the trustee, the Morris children and the Bank, a judgment creditor of the debtors, seek a determination that Morris, Inc. failed to convey its real estate to Intra following dissolution.

11. The cases cited by the Morris children do not involve corporate entities and thus are inapplicable to the issue of choice of law to determine capacity of a corporate transferor. See Aurora Gasoline Co. v. Coyle, 174 F.Supp. 331 (E.D.Ill. 1959); Post v. First National Bank, 138 Ill. 559, 28 N.E. 978 (1891).

manner of its dissolution, and its resulting obligations are subject to the control of the state which gave it birth. Thus, under the rule of comity existing between the various states, the rights granted by the state creating the corporation will be recognized insofar as they deal with its corporate life and existence. *Perry,* 279 Ill.App. at 202–03; *see* Restatement 2d of Conflicts, § 299, cmt. e, at 295–96.

■ By this reasoning, the law of the state of incorporation would be applied in determining a dissolved foreign corporation's capacity to convey real estate if that state's law were not against the public policy of Illinois. *See Eau Claire Canning Co.,* 213 Ill. at 578. In the present case, both Illinois and Iowa have "winding up" statutes that continue a corporation's existence following dissolution for the purpose of disposing of property.[12] It is the policy of such provisions to aid in the orderly distribution of corporate assets by validating the transfer of corporate property during this time. *Id.* at 577–78 (quoting *St. Louis and Sandoval Coal and Mining Co. v. Sandoval Coal and Mining Co.,* 111 Ill. 32, 39 (1884)); *Bishop v. Schield,* 293 F.Supp. 94, 96 (N.D.Iowa 1968). The Iowa statute at issue, § 496A.102, differs from Illinois law in that it continues corporate existence indefinitely to convey a dissolved corporation's property, while Illinois case law holds that corporate property passes automatically to the shareholders at the end of the statutory winding up period.[13] *See Shute v. Chambers,* 142 Ill.App.3d 948, 97 Ill.Dec. 92, 95–96, 492 N.E.2d 528, 531–32 (1986). However, the fact that Iowa provides a longer time for the corporation to dispose of assets following dissolution does not make its statute repugnant to the laws of Illinois, as both states' statutes serve to facilitate the transfer of title from the defunct corporation. *Cf. Perry v. Western Motor Car Co.,* 279 Ill.App. at 203 (holding that Ohio statute containing no time limit for dissolved corporation to sue or be sued was in harmony with policy of Illinois statute, which limited the time period to two years).

■ Because the Illinois and Iowa provisions have a similar purpose of extending corporate existence for the conveyance of property, it is appropriate to look to Iowa law to determine the capacity of Morris, Inc. to convey property following dissolution. The Court finds no merit in the Morris children's argument that application of Iowa Code § 496A.102 is prohibited by the Illinois foreign corporations statute, which provides that a foreign corporation shall enjoy no greater rights and privileges than those enjoyed by domestic corporations. *See* Ill.Rev.Stat., ch. 32, par. 157.103 (1981) (now Ill.Rev.Stat., ch. 32, par. 13.10 (1991)). This statute restricts the type of business activity a foreign corporation may engage in and is not relevant to a foreign corporation's right to wind up its affairs pursuant to the law of its state of incorporation. *Perry,* 279 Ill.App. at 202; *see Forcite Powder Co. v. Herdien,* 162 Ill.App. at 426–27.[14]

The Court is likewise not persuaded that the practical consequences of applying another state's law to determine the powers

---

**12.** Winding up statutes in effect at the time of the conveyances to Intra—Ill.Rev.Stat., ch. 32, par. 157.79 (1981) and Iowa Code § 496A.130 (1981)—provided for the liquidation of assets of a dissolved corporation. In addition, the provision here at issue, Iowa Code § 496A.102, allowed a dissolved corporation to convey property. Current statutes—Ill.Rev.Stat., ch. 32, par. 12.30 (1991) and Iowa Code § 490.1405 (1991)—likewise provide for continued corporate existence to convey property.

**13.** The Illinois survival of remedies statute previously limited this period to two years. Ill.Rev. Stat., ch. 32, par. 157.94 (1981). It has since been extended to five years. Ill.Rev.Stat., ch. 32, par. 12.80 (1991).

**14.** In a case cited by the Morris children, *Kessler Distributing Co. v. Neill,* 317 N.W.2d 519 (Iowa App.1982), the court held that a state could not, pursuant to a certificate of authority issued to a foreign corporation, continue the corporation's existence after revocation of its charter and so grant greater rights to the foreign corporation than those enjoyed by domestic corporations. This case stands for the proposition that the powers of a dissolved corporation are governed by the law of the state that created it, as this Court has concluded. *Kessler,* 317 N.W.2d at 521.

of a dissolved foreign corporation require that Illinois law be applied. The Morris children and the Bank assert that an Illinois title searcher, upon discovering a dissolved foreign corporation in a chain of title, would be inconvenienced by having to research another state's law to determine the corporation's legal capacity to convey property. They also contend that it would promote consistency in Illinois real estate law if Illinois winding up provisions were applicable to both domestic and foreign corporations. As discussed above, considerations of convenience and certainty are outweighed by the incorporating state's greater interest in regulating corporations created under its law, as the powers of each corporation are determined by the charter of the corporation and the laws of the state under which the charter was granted. *See Clinton v. Coppedge*, 2 F.Supp. 935, 939 (N.D.Okla.1933). In the present case, Iowa has a strong interest in having corporate property liquidated in a uniform manner rather than in a piecemeal fashion depending on the law of the state in which the property is located. Accordingly, the Court must look to Iowa law to determine the capacity of the debtors' dissolved Iowa corporation to convey its real estate to Intra following dissolution.[15]

## II.

Iowa Code § 496A.102, upon which Intra relies, provides in its first paragraph for survival of remedies in and against a dissolved Iowa corporation during the winding up period:

> The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corpora-

tion, ... for any right or claim existing, or any liability incurred, prior to such dissolution ..., if action or other proceeding thereon is commenced within two years after the date of such dissolution....

Iowa Code § 496A.102 (1981).

This survival provision, derived from § 98 of the Model Business Corporation Act,[16] abrogates the common law rule that a corporation's existence terminates on dissolution and continues corporate powers for the limited purpose of winding up. 19 Am.Jur.2d *Corporations*, § 2840, at 625 (2d ed. 1986). Generally, at the end of such a statutory period, dissolution of the corporation would become operative for all purposes, and the corporation would be without power to convey property or take other action. *Id.* at 626.

The Iowa legislature, however, supplemented the Model Act provision with a nonuniform amendment, found in the second paragraph of § 496A.102:

> A corporation which has been dissolved ... *may nevertheless continue to act for the purpose of conveying title to its property, real and personal, and otherwise winding up its affairs.*

Iowa Code § 496A.102 (1981) (emphasis added). Unlike the survival of remedies provision preceding it, this paragraph imposes no time limit on the extension of corporate existence to convey property following dissolution.

Intra contends that this latter paragraph grants a dissolved corporation a power to convey property that is separate from the power to "otherwise wind up its affairs."

---

**15.** In a previous opinion, the Court relied on Illinois law in finding that the debtors acquired an interest in homestead property titled in Morris, Inc. upon dissolution of the corporation. *In re Morris*, 115 B.R. 626 (Bankr.S.D.Ill.1990). The parties in that case raised no issue concerning the appropriate state law to be applied in determining the effect of corporate dissolution on title to the property. The Court notes that under Iowa law, the debtors as shareholders of the dissolved corporation had a sufficient interest in assets of the corporation to be entitled to their claimed homestead exemption. *See In re Culver's Estate*, 145 Iowa 1, 123 N.W. 743, 745 (1909) (stating general rule that property of

dissolved corporation remaining after payment of debts belongs, in equity, to corporation's shareholders, even though legal title remains in corporation); *see also* 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 8134, at 411 (rev. perm. ed. 1988).

**16.** *See* ABA–ALI Model Bus. Corp. Act § 98 (1953). Except for addition of the second paragraph, § 496A.102 varies only slightly from the Model Act. *See* Note, *Suits By and Against Dissolved Corporations*, 48 Iowa L.Rev. 1006, 1015–16 (1963).

Because winding up normally includes the conveying of property, Intra reasons, the legislature's separate recitation of this power created a power to convey property that extends beyond the winding up phase and validates any conveyance by a dissolved corporation. Intra asserts, therefore, that the conveyances from Morris, Inc. in 1981 and 1982 were valid regardless of whether they were part of the winding up of the dissolved corporation. Intra adds that even if the statute were construed to require conveyances to be part of winding up, the subject property was effectively conveyed to Intra in 1982 when Morris, Inc. liquidated its business and discontinued farming.

The trustee maintains that the power to convey property under § 496A.102 is limited to conveyances that are part of the winding up process. He contends that the conveyances to Intra in 1981 and 1982 could not have been for the purpose of winding up because, at the time of the conveyances, no one was aware the corporation had been dissolved. The trustee notes that Morris, Inc. continued to carry on business after the 1981 conveyance to Intra and that it discontinued farming and sold its remaining assets in 1982 only upon being forced to do so by Intra. Since, the trustee contends, these conveyances were made without the requisite knowledge and intent to wind up, they were not authorized under the second paragraph of § 496A.102 and were ineffective to transfer title to Intra.

■ In interpreting this state law provision, the Court must look to decisions of the Iowa state courts and, in the absence of any definitive ruling by these courts, may consider "analogous decisions, considered dicta, scholarly works, and any other reliable data" tending to show how the highest state court would decide the issue at hand. *Michelin Tires (Canada), Ltd. v. First Nat'l Bank of Boston*, 666 F.2d 673, 682

(1st Cir.1981) (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). An examination of Iowa case law reveals no authoritative construction of the second paragraph of § 496A.102. The Iowa supreme court referred to this provision in another context, finding that the "otherwise winding up its affairs" language was not intended to extend the time for bringing suits against dissolved corporations beyond the specific two-year period set forth in the first paragraph of § 496A.102. *State v. Bi–States Construction Co., Inc.*, 269 N.W.2d 455, 457 (Iowa 1978). The *Bi–States* court expressly agreed with the reasoning of *Bishop v. Schield Bantam Co.*, 293 F.Supp. 94, 96 (N.D.Iowa 1968), where the court stated in dicta:

> A more rational justification for the inclusion of the last paragraph of the Iowa statute would be the facilitation of the transfer of title to both real and personal property in the event that such problems were discovered years after dissolution.

The *Bishop* court cited a law review article written by Clarence Cosson, a principal draftsman of the business corporations act of Iowa Code c. 496A. *See* Cosson, *The Iowa Business Corporation Act*, 45 Iowa L.Rev. 12 (1959). In his article, Cosson compared the new act to Iowa's previously existing act, Iowa Code c. 491,[17] as well as to the Model Act. Cosson explained that the second paragraph of § 102, not found in the Model Act, is

> essentially a section of the old law [Iowa Code § 491.56 (1958)] preserved and amplified to facilitate, as far as possible, the transfer of merchantable title in cases in which it might be discovered years after the expiration of corporate existence that the corporation had failed to convey all its property.

45 Iowa L.Rev. at 25; *see also* Note, *Suits By and Against Dissolved Corporations*,

---

**17.** Iowa Code c. 491 was not repealed when c. 496A was enacted. Iowa thereafter had two separate corporation chapters, requiring a corporation to elect under which of the two chapters it would be incorporated. *See* Note, *Suits By and Against Dissolved Corporations*, 48 Iowa

L.Rev. 1006, 1013 (1963); *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 873 (Iowa 1984). The articles of incorporation of Morris, Inc. show that it was incorporated under Iowa Code c. 496A.

48 Iowa L.Rev. 1006, 1017 (1963) (hereinafter "Note").

Because the second paragraph of § 496A.102 was intended to preserve former § 491.56, it is appropriate to examine this provision, as well as relevant case law, to discern the meaning of § 496A.102. Iowa Code § 491.56, referred to by Cosson, was derived from an earlier Iowa statute providing that dissolved corporations "may nevertheless continue to act for the purpose of winding up their concerns, but for no other purpose." Iowa Code § 1171 (1860) (revision). The last phrase "but for no other purpose" was later deleted with no change in meaning. Iowa Code § 1080 (1873) (revision); *see* Note, 48 Iowa L.Rev. at 1013–1014. The 1873 provision was renumbered and eventually became Iowa Code § 491.56. Under this statute, a dissolved Iowa corporation retained title to its property for the purpose of winding up its affairs. *See* Note, 48 Iowa L.Rev. at 1014; *M.H. McCarthy Co. v. Central Lumber & Coal Co.*, 204 Iowa 207, 215 N.W. 250 (1927) (finding, under statute, that dissolved corporation continued in existence to extent necessary to hold and dispose of property in winding up its affairs); *State v. Fogerty*, 105 Iowa 32, 74 N.W. 754, 755 (1898) (holding that title to property remained in defunct corporation for the purpose of winding up its affairs).

Under § 491.56, continuation of corporate existence for winding up applied only in cases of voluntary dissolution or dissolution by expiration of a term. In § 496A.102, this provision was expanded to include corporations that have been involuntarily dissolved as well. *See* Note, 48 Iowa L.Rev. at 1014. Further, addition of the second paragraph of § 496A.102 made explicit the power to convey property that was implicit in the "winding up their concerns" language of § 491.56. There is no indication, however, that the drafters meant to alter existing law by granting the dissolved corporation a power to convey that is separate from the winding up process. Rather, it is more reasonable to assume they sought to ensure that the corporation's ability to convey property in wind-

ing up would not be affected by expiration of the two-year period provided in the first paragraph. Thus, under the second paragraph of § 496A.102, the corporation has continued existence after the two year period to convey property in the complete elimination of corporate business, and the power to convey is limited to that purpose.

Intra contends that this construction of § 496A.102 renders the power to convey superfluous because conveyance of corporate property is authorized by the last phrase allowing the corporation to "otherwise [wind] up its affairs." Intra asserts that if this power were intended as part of winding up, the statute would have read instead: "may wind up its affairs, including the conveying of real and personal property."

The Court agrees that the second paragraph of § 496A.102 could have been more clearly drafted. However, the statute's delineation of the power to convey does not indicate this power was to be separate from the winding up process. The phrase "and otherwise winding up its affairs," rather than rendering the power to convey superfluous, refers back to that power while including "other" aspects of winding up. The second paragraph makes clear that, of all the things involved in winding up— paying debts, disposing of property, bringing and defending suits, distributing assets—the dissolved corporation may take action, other than bringing and defending suits, to completely wind up its affairs after the two year period has passed.

This construction of § 496A.102 as granting a qualified power to convey is in accord with other provisions of Iowa Code c. 496A pertaining to corporate dissolution. Section 496A.91, governing involuntary dissolution, provides that upon entry by the secretary of state of an order of dissolution, "the existence of a corporation shall cease, except for the purpose of suits, other proceedings and appropriate corporate action ... and the corporation shall proceed to liquidate its business and affairs...." Iowa Code § 496A.91 (1981). Section 496A.130 further provides that upon issuance of a certificate of cancellation,

the corporate existence of the corporation shall terminate, ... and the corporation shall cease to carry on its business, except insofar as may be necessary for the winding up thereof or for securing reinstatement.... Unless the corporation is reinstated, the corporation shall proceed to liquidate its business and affairs....

Iowa Code § 496A.130 (1981).

■ These sections show that after dissolution, the corporation's power to act is limited to either winding up or seeking reinstatement. The corporation has no power to continue its business or to convey property in the course of doing business. Because the corporation lacks authority to do business, it follows that the power to convey in the second paragraph of § 496A.102 must be for the purpose of winding up. The statutory context of this paragraph, therefore, as well as its language and history, show that the dissolved corporation's power to convey property under the second paragraph of § 496A.102 extends only to conveyances that are part of winding up the corporate affairs.

Having made this determination, the Court must decide whether the conveyances to Intra in 1981 and 1982 were part of the winding up of Morris, Inc. so as to be authorized under the second paragraph of § 496A.102. The trustee asserts that the conveyances did not constitute winding up since the debtors, as corporate officers, did not know the corporation had been dissolved. The trustee argues that knowledge and intent are inherent in the concept of "purpose" as used in the statute and contends that winding up entails knowledge that a corporation has been dissolved.

■ While it is unusual for a dissolved corporation's affairs to be wound up without its officers knowing the corporation has been dissolved, section § 496A.102 requires only that conveyances be made with the intent or purpose of winding up the corporation's business, not with knowledge that the corporation has been dissolved. "Winding up" is a process separate from the formal dissolution of a corporation and takes place when the corporation ceases to

be a going concern and begins to dispose of assets with which its business was carried on, paying debts and distributing any remaining assets to shareholders. *See Lynch v. State Board of Assessment and Review*, 228 Iowa 1000, 291 N.W. 161, 163 (1940); Jacob Mertens, Jr., Law of Federal Income Taxation, § 42.05 (West 1992) (hereinafter "Mertens"). A corporation's business may be wound up without the corporation being dissolved under state law. Mertens, § 42.16; *see Beidenkopf v. Des Moines Life Ins. Co.*, 160 Iowa 629, 142 N.W. 434, 441 (1913). Thus, knowledge that a corporation has been dissolved is not an essential element of winding up the corporation, and the conveyances to Intra were not invalid merely because the debtors were unaware of the dissolution of Morris, Inc.

The Court finds distinguishable the cases cited by the trustee as indicating that deeds by a dissolved corporation are invalid when not explicitly executed by corporate officers to show the fact of dissolution. *See New Hampshire Fire Insurance Co. v. Virgil and Frank's Locker Service, Inc.*, 302 F.2d 780 (8th Cir.1962); *Cloverfields Improvement Ass'n, Inc. v. Seabreeze Properties, Inc.*, 32 Md.App. 421, 362 A.2d 675 (1976). The statutes at issue in those cases terminated all corporate rights and existence upon dissolution and provided for the winding up of a dissolved corporation by its directors and officers as trustees. By contrast, the Iowa statutes here extend the corporation's existence for the purpose of winding up and expressly provide for liquidation of corporate business and affairs by the corporation. Iowa Code §§ 496A.91, 496A.102, 496A.130.

■ Whether the conveyances of corporate property in this case were valid as part of winding up is ultimately a question of fact, as there can be no definitive rule concerning what constitutes "winding up." *Lynch;* Mertens at § 42.07. A dissolved corporation may act only in winding up and must cease carrying on its business. *See* Iowa Code § 496A.130. Therefore, actions that will prevent the corporation from continuance of the purposes for which it

was organized are deemed to be part of the winding up process. *Lynch; cf. Kratky v. Andrews*, 224 Minn. 386, 28 N.W.2d 624, 628 (1947) (holding that assignment of real estate contract to dissolved corporation which had been organized for buying and selling real estate was invalid upon facts showing that corporation was engaged in business for which it was incorporated).

▮ The Court finds that the conveyance of 2,000 acres to Intra in 1981 was not part of winding up the business of the dissolved corporation, Morris, Inc. This sale did not serve to conclude the business of the corporation but was, rather, an effort to reorganize the debt of Morris, Inc. so that it could continue farming as a lessee of Intra. The length of the ten-year farm lease itself shows that the corporation had no intention of winding up its affairs. Indeed, Morris, Inc. carried on its farming business following the conveyance as it had before. While some of the proceeds of the sale were used to pay corporate creditors, the remaining amount was appropriated by the debtors for investment in new enterprises without regard to winding up the corporation's business. The 1981 conveyance to Intra, therefore, was not part of winding up the business of Morris, Inc. and was invalid as an unauthorized conveyance by a dissolved corporation.

▮ When, however, Morris, Inc. conveyed its remaining land to Intra in October 1982 and reconveyed the 2,000 acre farm, the corporation disposed of the means of carrying on its business and completely ceased farming operations. Assets of the corporation—farm equipment and stored grain—were sold to pay creditors Intra and the Internal Revenue Service. While these actions were taken at the behest of Intra, they were nevertheless done with the intent to liquidate Morris, Inc. and settle its affairs. The conveyances in 1982, unlike the 1981 conveyance, did not serve to carry on the corporation's business and

thus must be deemed part of the winding up of Morris, Inc. As such, they were valid under the second paragraph of § 496A.102, which allows a dissolved corporation to convey real property in winding up its affairs.

The trustee objects that Morris, Inc.'s actions in late 1982, although in the nature of winding up, were invalid because Morris, Inc. did not wind up its affairs properly. He observes that Morris, Inc. never adopted a formal plan of winding up and failed to pay creditors of the corporation. In addition, certain assets that were titled in the corporation were never conveyed. The trustee asserts that the second paragraph of § 496A.102 was intended to facilitate transfer of assets omitted from the normal winding process and should not be applied in this fact situation to relieve Intra of the consequences of taking property from a dissolved corporation without verifying its corporate status.

While it is unlikely the drafters of the Iowa statute envisioned the precise factual situation here, they provided a mechanism in the second paragraph of § 496A.102 to avoid title problems arising from the conveyance of assets by a dissolved corporation. So long as the conveyances to Intra were for the purpose of winding up the corporation's business, they came within the language of the statute and must be approved. The Iowa statutes, moreover, do not require a formal resolution or plan of winding up, but merely call for the dissolved corporation to cease its business and begin the liquidation process. *See* Iowa Code §§ 496A.91, 496A.130. The conveyances to Intra in 1982 served to further the winding up of Morris, Inc. and were not invalid simply because the winding up process was never completed.[18]

For the reasons stated, the Court finds that Morris, Inc. validly conveyed its real estate to Intra in 1982 and the debtors, as

---

**18.** The Court notes that in cases such as this where the dissolved corporation fails to "proceed promptly" with liquidation, the Iowa statutes provide for liquidation by a court of equity to ensure that creditors are paid and assets transferred from the corporation. *See* Iowa

Code §§ 496A.91, 496A.130 (stating that "the district court in a suit in equity [has] . . . power to liquidate the assets and business of [a dissolved] corporation . . . in a suit by a shareholder or creditor . . . when such corporation fails to proceed promptly with . . . liquidation. . . .").

shareholders of the dissolved corporation, have no interest that became property of their bankruptcy estates. Accordingly, the Court grants summary judgment for defendants Intra and Hancock as to Count I (ejectment), Count III (declaratory judgment concerning validity of conveyances to Intra), and Count IV (authority to sell real estate) of the Trustee's complaint. Count II concerning validity of Hancock's mortgage is dismissed for lack of subject matter jurisdiction.