In re Richard C. **MORRIS**, and
Robert E. Morris, Debtors.

Charles E. **JONES**, Trustee,
Plaintiff–Appellant,

v.

F.C. **MORRIS & SONS, INC.**, et
al., Defendants–Appellees.

Civ. Nos. 93–4074, 93–4084.

United States District Court,
S.D. Illinois.

Aug. 5, 1993.

Terrell L. Sharp, Mt. Vernon, IL, Darrell W. Dunham, Murphysboro, IL, Curtis R. Barnes, Galatia, IL, for plaintiff-appellant.

James E. Ford, Benton, IL, Mark J. Ballard, Campbell, Black, Carnine & Hedin, P.C., Mt. Vernon, IL, John D. Lien, Foley & Lardner, Chicago, IL, James L. Van Winkle, McLeansboro, IL, James E. Dull, Mt. Vernon, IL, Robert D. Albright, Salem, IL, for defendants-appellees.

### OPINION

FOREMAN, Senior District Judge:

Before the Court are the consolidated appeals of bankruptcy trustee Charles E. Jones and the beneficiaries and trustees of the Morris Children's Trust. The parties have appealed the bankruptcy court's November 24, 1992, order granting summary judgment in favor of Intra Illinois, Inc., Intra USA, Inc., and the John Hancock Mutual Life Insurance Company on the trustee's complaint concerning the validity of a conveyance made to Intra by a dissolved corporation of which debtors Richard and Robert Morris were the major shareholders.

The bankruptcy court's order was entered in a case or proceeding referred to the bankruptcy judge under 28 U.S.C. § 157 (1988). Thus, this Court has jurisdiction to hear the appeal under 28 U.S.C. § 158 (1988). Because the facts and legal arguments of this case are well-presented in the parties' briefs, the Court finds that oral argument is unnecessary pursuant to Bankruptcy Rule 8012.[1]

### I. BACKGROUND

The facts giving rise to this controversy were set forth in detail in the bankruptcy court's decision. *In re Morris,* 147 B.R. 929 (Bankr.S.D.Ill.1992). Because there is no dispute as to these facts, this Court will discuss only those points necessary to an understanding of this decision.

This bankruptcy case concerns the ownership of farmland in Hamilton County, Illinois, which was acquired in 1973 by a small family corporation known as F.C. Morris & Sons, Inc. The bankruptcy debtors, Richard and Robert Morris, were major shareholders in the business,[2] which was incorporated under Iowa law.

The corporation was involuntarily dissolved by the state of Iowa in 1977 for failure to file an annual report. However, the corporation, unaware of the dissolution, continued operating as a corporation. The debtors mortgaged the Illinois farm to appellee John Hancock in 1978 to secure a $3 million loan. In 1981 and 1982, when the corporation's financial status had deteriorated further, the debtors conveyed part of the farmland to

---

1. Rule 8012 provides that oral argument shall be allowed in all cases

   unless the district judge or the judges of the bankruptcy appellate panel unanimously determine after examination of the briefs and record, or appendix to the brief, that oral argument is not needed.... Oral argument will not be allowed if (1) the appeal is frivolous; (2) the dispositive issues or set of issues has been recently authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and rec-

   ord and the decisional process would not be significantly aided by oral argument.
   **Bankruptcy Rule 8012.**

2. The debtors each owned 25 percent of the corporate stock of Morris, Inc., at the time the property was purchased in 1973. Upon the death of their father, they each became owners of 50 percent of the stock. In December 1976, the debtors transferred approximately 9 percent of the stock to two trusts (the Morris Children's Trust) for the benefit of their children.

land trusts of which appellees Intra Illinois and Intra USA were the beneficiaries.

The dissolution of the Morris corporation was discovered in 1986 when Intra defaulted on the loan to John Hancock, and John Hancock filed foreclosure proceedings in state court in Hamilton County. The bankruptcy court became embroiled in the dispute when the debtors each filed petitions for bankruptcy in 1989. Their petitions did not list the farm among the debtors' assets. However, the petitions did claim an interest in the assets of the defunct corporation, which theoretically would include the Hamilton County farm if the John Hancock mortgage and the conveyance to Intra were declared invalid. Accordingly, the bankruptcy trustee filed an adversary complaint in the debtors' bankruptcy cases seeking possession of the property and authority to sell it for the benefit of the debtors' creditors.

The bankruptcy court granted summary judgment in favor of Intra and John Hancock and against the trustee, holding that the farmland was properly transferred to Intra even though the corporation had been involuntarily dissolved. In a detailed opinion, the bankruptcy court found that Iowa law should be applied to this case because Iowa law governed the corporate existence of Morris, Inc., and, therefore, was determinative of the corporation's powers upon dissolution. The court further found that the applicable Iowa law was section 496A.102 of the Iowa Code, which provided that

> The dissolution of a corporation or the expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or expiration, if action or other proceeding thereon is commenced within two years after the date of such dissolution or expiration. . . .

A corporation which has been dissolved or the period of duration of which has expired by limitation or otherwise, may nevertheless continue to act for the purpose of conveying title to its property, real and personal, and otherwise winding up its affairs.

Iowa Code § 496A.102 (1981).[3]

Based upon this statute, the bankruptcy court held that an involuntarily dissolved corporation was authorized to convey property for an unlimited period of time after its dissolution, but only for the purpose of winding up its affairs. The court further found that Morris, Inc., was winding up its affairs when it conveyed its land to Intra and sold all the rest of its property in 1982. As a result of this finding, the bankruptcy court held that the farmland was properly conveyed to Intra and, therefore, was not property of the bankruptcy estate. The bankruptcy court further ruled that it lacked jurisdiction to determine the validity of the John Hancock mortgage.

The bankruptcy trustee has appealed the ruling, joined by the trustees of the Morris Children's Trust. Intra and John Hancock have both filed briefs as appellees. The trustee has filed a Motion to Strike Brief of John Hancock Mutual Life Insurance Company (Document No. 20) on the grounds that John Hancock lacks standing to argue the issues on appeal. The Court hereby **DENIES** the motion. Even if John Hancock did not having standing, the Court would consider John Hancock's brief as the brief of an amicus curiae pursuant to Rule 29 of the Federal Rules of Appellate Procedure.

## II. ANALYSIS

In a bankruptcy appeal, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." **Bankruptcy Rule 8013.** *See*

---

3. As the bankruptcy court points out, this section was repealed in 1989 when the Iowa legislature enacted the new Iowa Business Corporation Act. However, the new code contains a similar provision. *See* Iowa Code § 490.1421(3) (1989) ("A corporation administratively dissolved continues its corporate existence but shall not carry on any business except that necessary to wind up and liquidate its business and affairs under section 490.1404 and notify claimants under sections 490.1406 and 490.1407.").

*also In re Excalibur Auto. Corp.*, 859 F.2d 454, 458 (7th Cir.1988); *In re Evanston Motor Corp.*, 735 F.2d 1029, 1031 (7th Cir.1984). However, where questions of law are concerned, the district court will review the bankruptcy court's ruling *de novo*. *In re Sanderfoot*, 899 F.2d 598, 600 (7th Cir.1990), *rev'd on other grounds*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *In re Evanston Motor Corp.*, 735 F.2d at 1031.

The bankruptcy trustee and the beneficiaries and trustees of the Morris Children's Trust raise two basic issues in this appeal. The first is a conflict of laws question as to whether Illinois or Iowa law applies to this dispute. The second is whether the applicable state's law would allow a dissolved corporation to convey real estate under the circumstances present in this case.

The appellants contend that the bankruptcy court was obliged to apply Illinois's corporate survival statute and that the conveyance was invalid under that law. The Illinois law is similar to the first paragraph of the Iowa statute in providing that a corporation may sue or be sued during a two-year period following its dissolution. Ill.Rev.Stat. ch. 32, ¶ 12.80 (1991).[4] Unlike the Iowa Code, however, the Illinois statute does not contain the additional provision authorizing a corporation to continue to act for an unlimited period of time for the purposes of winding up its affairs. Thus, the appellants argue that the corporation lacked the power to convey the farmland to Intra after the two-year period expired. As a result, they contend that the property belongs to the Morris brothers and the Morris Children's Trust as the shareholders of the defunct corporation.

Appellees Intra and John Hancock argue that the bankruptcy court properly found that Iowa's corporate survival statute applies and that it authorized Morris, Inc., to convey its farmland to Intra regardless of the length of time that had elapsed since the corporation was dissolved. John Hancock goes on to argue that there are other—in its view, better—grounds to support the bankruptcy court's judgment.[5] However, it is unnecessary to discuss the merits of these alternative arguments because this Court concludes that the bankruptcy court's decision was correct.

## A. Which state's law controls?

■ The appellants argue that the bankruptcy court failed to follow the general conflicts rule of lex situs—i.e., that lands and other immovables are governed by the law of the state where the property is situated. To the contrary, the Court finds that the bankruptcy court did properly apply the law of the situs, which in this case is Illinois.

■ It is well established that "[t]he Illinois law of conflicts requires the application of the law of the situs of the land in determining the validity, construction, force, and effect of an instrument affecting real estate." *Aurora Gasoline Co. v. Coyle*, 174 F.Supp. 331, 336 (E.D.Ill.1959). However, in determining the validity of such a transaction involving corporations, Illinois courts will look to the laws of the state of incorporation with respect to issues regarding the corporation's existence and legal capacity.

All corporations derive their life and right to transact business from the State in which they are incorporated. The *manner* of doing business in a foreign jurisdiction may be controlled by the statutes of that jurisdiction, but the organization and the manner of its dissolution and its obligations thereunder are subject to the control of the State which gave it birth. Under the rule of comity existing between the various States, the rights of the State creating the corporation are recognized in so

---

4. The statute was recently amended to provide for a five-year winding-up period. 805 Ill.Comp. Stat. 5/12.80 (1992). However, the statute provided for only a two-year period at the time of the conveyance at issue in this dispute.

5. The appellee argues, inter alia, that (1) the Morris brothers are estopped to deny the corporate existence of Morris, Inc., and the validity of the deeds to Intra; (2) although dissolved, Morris, Inc., continued to act as a corporation and, therefore, the deeds to Intra are valid as the acts of a de facto corporation; and (3) if the court were to find that title to the property passed to the shareholders immediately upon dissolution of the corporation, the Morris brothers conveyed their 90 percent shareholder interest by signing the deed to Intra.

far as they deal with its corporate life and existence.

*Perry v. Western Motor Car Co.,* 279 Ill.App. 195, 202–03 (1st Dist.1935) (emphasis added); *see also Eaton v. Home Missionary Society,* 264 Ill. 88 (1914) (holding that a corporation which has the capacity to acquire and hold real estate under the laws of the state of its incorporation may take and hold real estate in Illinois; however, the corporation must comply with the laws of Illinois in the management, control and disposition of the property); *Starkweather v. American Bible Society,* 72 Ill. 50 (1874) (holding that a foreign corporation which lacks the capacity to acquire and hold property under the laws of the state of its incorporation is incapable of acquiring or holding title to property in Illinois).

■ The appellants refer to a number of analogous cases, arguing that Illinois courts have routinely applied the law of the situs to issues involving real estate. However, a careful analysis of these cases shows that the courts recognize an important distinction between the law governing the transaction itself and the law governing a party's existence, status or capacity to participate in the transaction. For example, the appellants cite the case of *Sears v. Minchew,* 212 Ga. 417, 93 S.E.2d 746 (1956), which involved the rights of an adopted child to the property of a parent who died intestate. In that case, the court looked to the law of the situs of the real estate to determine whether an adopted child could inherit. However, to determine the child's status—i.e., whether the child was properly adopted—the court looked to the

law of the state where both the child and the parent were domiciled. In short, the law of the situs generally governed the distribution or inheritance of the real estate but the law of the child's domicile governed the child's legal status.[6] Applying that analysis to the case at bar, the bankruptcy court correctly held that although Illinois law governed the validity of the conveyance itself, the court must look to the law of the state of incorporation to determine the existence or legal capacity of the corporation itself.[7]

■ The appellants concede that Illinois would look to Iowa law to determine a corporation's existence. However, they contend that the Illinois statute must be applied because it governs the *effect* of the corporation's continued existence—i.e., it determines the corporation's power to make a conveyance more than two years after its dissolution. The Court disagrees. Contrary to the appellants' contentions, the corporate survival statutes of both states are directed at the continuation of the corporations following their dissolution. Thus, these statutes govern the existence or legal status of the corporation, as opposed to the manner in which the corporation may conduct its business in the state.

■ Illinois courts have defined their state's statute as "a corporate survival statute rather than a statute of limitations." *Poliquin v. Sapp,* 72 Ill.App.3d 477, 481, 28 Ill.Dec. 615, 619, 390 N.E.2d 974, 978 (4th Dist.1979). Corporate survival statutes, by their very nature, are intended to continue the existence of a corporation for purposes of winding up corporate affairs. *See In re Wil-*

---

**6.** Similarly, *Post v. First National Bank,* 138 Ill. 559, 28 N.E. 978 (1891), applied Illinois law to determine the validity of a mortgage executed in Texas affecting Illinois real estate. The court affirmed the lower court's finding that the mortgage was valid "because here a married woman may mortgage her separate property to secure indebtedness of her husband...." *Id.* 28 N.E. at 978. Thus, the court looked to the law of the situs, Illinois, to determine the legal effect of actions undertaken by a person of a certain status (i.e., a married woman). A different question would have arisen as to the law that applies to determine the person's status. If that were the question at issue in *Post,* the Illinois court would have looked to the state of the woman's domicile to see if she was in fact married. *See Peirce v.*

*Peirce,* 379 Ill. 185, 39 N.E.2d 990 (1942) ("The general rule of conflict of laws is that the marital status is governed by the law of the State of domicile."); *cf. McNamara v. McNamara,* 303 Ill. 191, 135 N.E. 410, 413 (the status of a child as heir depends upon his legitimacy, as determined by the law of the State in which he has his domicile), *cert. denied,* 260 U.S. 734, 43 S.Ct. 95, 67 L.Ed. 487 (1922).

**7.** The federal courts follow a similar procedure with respect to a corporation's capacity to sue or be sued. *See* Fed.R.Civ.P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.").

*son,* 90 B.R. 208, 215 (Bankr.E.D.Va.1988) (stating that the "corporate continuation provision in a winding up statute ... is not a statute of limitations; rather it affects the very capacity of the corporation to sue or be sued."). Thus, Illinois courts properly hold that the law of the state of incorporation controls how long the corporation remains in existence following its dissolution. *See Eau Claire Canning Co. v. Western Brokerage Co.,* 213 Ill. 561, 575, 73 N.E. 430, 436 (1905) (finding that foreign corporation did not cease to be a corporation for all purposes when dissolved under Michigan law; the incorporating state's law provided that the corporation "continued to exist for the purpose of collecting its assets and winding up its business...."); *Life Ass'n of America v. Fassett,* 102 Ill. 315, 329 (1882) ("If ... the company still exists in its own State for the purpose of suing and being sued, and having its property applied to the payment of its debts, and for the purposes of making conveyances and transfers of its property to accomplish the same ends, how can it consistently be said that it has no existence here, for like purposes?").

■ The appellants argue that there is no reason to believe that the Iowa statute was intended to have an extraterritorial effect. In support of their argument, they cite the case of *McCormick v. Statler Hotels Delaware Corp.,* 30 Ill.2d 86, 90, 195 N.E.2d 172, 174 (1963), for the proposition that "legislation is presumptively territorial only and confined to the limits over which the law-making power has jurisdiction." However, McCormick was concerned with the manner in which a foreign corporation did business in Illinois, as opposed to the validity of its incorporation or existence. At issue in that case was whether a Delaware corporation was subject to the provisions of the Illinois Business Corporation Act which required corporations doing business in the state to keep a record of shareholders at its registered office and imposed a penalty for refusal to allow a shareholder to have access to those records. The court held that Delaware's statute regarding shareholder access to corporate records was not required to be given extraterritorial effect in Illinois because Delaware statute by its express terms, regulates only the conduct of business in that state.

As discussed above, a different question arises as to the applicable law regarding a corporation's existence or legal capacity upon dissolution. "Unless such statutes are by their terms restricted in their operation to the state in which they are enacted, they may be given extraterritorial effect and will be applied in federal courts in another state." 16A Deborah L. Nelson & Myron W. Wasiunec, Fletcher Cyclopedia of the Law of Private Corporations § 8143, at 445 (1988 rev. ed.); *cf. Warren v. First Nat'l Bank,* 149 Ill. 9, 25, 38 N.E. 122, 125 (1893) ("It is the charter alone which, by the law of comity, is recognized and enforced in other jurisdictions, and not the general legislation of the state in which the company is formed. The general laws and regulations of a state are intended to govern only within the limits of the state enacting them, and the state can have no power to give them extraterritorial effect."); *Alpena Cement Co. v. The Jenkins & Reynolds Co.,* 244 Ill. 354, 358, 91 N.E. 480 (1910) ("By the comity which exists between the States, and in the absence of any express law to the contrary, implied permission is granted to a foreign corporation to exercise its corporate powers in a State other than that of its domicile, provided the exercise of such powers is not repugnant to the policy of the State or prejudicial to its interests.... A State, however, has the right to prohibit a foreign corporation from exercising any part of all of its charter powers within its borders, to impose such terms and conditions upon its right to do business in the State, as it may see fit, or to entirely exclude it from the State.").

■ The appellants argue that application of Iowa's longer winding-up period would be contrary to the public policy expressed in Illinois's foreign corporations statute, which provides that

A foreign corporation which shall have received a certificate of authority under this Act shall, until a certificate of revocation or withdrawal shall have been issued as provided in this Act, enjoy the same, but no greater rights and privileges as a domestic corporation ... a foreign corporation ...

shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character.

Ill.Rev.Stat. ch. 32, § 13.10 (1984). Illinois courts have patently rejected this argument. *Perry v. Western Motor Car Co.*, 279 Ill.App. 195, 202–03 (1st Dist.1935); *Forcite Powder Co. v. Herdien*, 162 Ill.App. 425 (1st Dist. 1911).

▮▮ In *Forcite*, the court found the foreign corporations statute inapplicable because the corporation was not "doing business" in Illinois but was merely bringing a lawsuit to wind up its corporate affairs. 162 Ill.App. at 426. The court then went on to find that the law of the state of incorporation, New Jersey, was not contrary to the public policy of Illinois.

> Under that statute, the corporate body ... is alive and continued a corporate entity for the purpose of bringing this or any other suit, to settle or close its affairs.

> The law of this State extends the life of a corporation for two years for similar purposes, so it cannot be properly said it is against the public policy of this State to hold that the plaintiff is, under the New Jersey statute, a corporation for purposes of maintaining this suit. We think that it is a necessary and wise public policy that continues the life of a corporation for the purpose of prosecuting and defending suits for the purpose of winding up its affairs.

> .    .    .    .    .

> It appearing that the law of New Jersey continuing the life of a corporation to bring suits to settle its affairs is not against the public policy of this State through comity,

the said law is recognized and the judgment is affirmed.

*Id.* at 427. Similarly, *Perry* states that

> There is nothing in the Ohio statutes continuing the life of a corporation after dissolution for the purpose of collecting or distributing assets repugnant to the laws of this State, because of the fact that that right or obligation exists for a longer time than the limitation provided by the laws of Illinois. It gives the Ohio corporation no greater powers than a company incorporated under the laws of this State. It is not repugnant to the laws of the State of Illinois inasmuch as its purpose is identical after dissolution of the corporation with the purpose of the statute of this State. The fact that the limitation extends over and beyond two years only adds to that corporation an increased liability, if anything.

279 Ill.App. at 202–03;[8] *see also Eau Clair Canning Co. v. Western Brokerage Co.*, 213 Ill. 561, 578, 73 N.E. 430, 437 (1905) (finding that Michigan's corporate survival statute "is in harmony with the policy which prevails in our own state in regard to the continuance in existence of dissolved corporations for the purpose of instituting such proceedings as are necessary to the winding up of their business.").[9]

Based upon this analysis, the Court concludes that the bankruptcy court correctly determined that Iowa's corporate survival statute was applicable to this dispute.

**B. Validity of the transfer under Iowa law**

▮▮ The appellants argue that the bankruptcy court erred in finding that the conveyance to Intra was valid under Iowa's corporate survival statute. As a preliminary mat-

---

8. The appellants attempt to distinguish this case by incorrectly arguing that there was no statutory provision in *Perry* to prohibit foreign corporations from receiving greater rights than domestic corporations. The Court acknowledges that the decision does not expressly refer to the Illinois foreign corporations statute; it merely refers to "the argument that a foreign corporation has no greater right than a domestic corporation." *Id.* at 202. However, there is no question that the statute was in effect at the time of the decision and, therefore, was applicable to the court's ruling.

9. The Court also finds no merit in the appellants' argument that if a corporation's property is not conveyed within the two-year period provided by the Illinois statute, there could be no legal recourse against the corporation if the conveyance were invalid. This argument is without merit. The statute's two-year period refers only to actions based upon rights/obligations that accrued prior to dissolution. The statute does not limit the time period for actions based upon the corporation's actions in winding up its affairs.

ter, the appellants assert that the statute must be strictly construed because it is in derogation of the common law. *See Summers v. Summers,* 40 Ill.2d 338, 239 N.E.2d 795 (1968). Notwithstanding this general rule, however, courts have generally given a broad reading to corporate survival statutes. "Such statutes are remedial in nature and should be given a liberal construction." 16A Deborah L. Nelson & Myron W. Wasiunec, Fletcher Cyclopedia of the Law of Private Corporations § 8143, at 443 (1988 rev. ed.); *see also Bishop v. Schield Bantam Co.,* 293 F.Supp. 94, 96 (N.D. Iowa 1968) ("Statutes relative to litigation against a dissolved corporation are liberally construed.").

■ The appellants argue that the conveyance to Intra could not have been part of the winding-up process envisioned by the statute because none of the corporate officers knew that the corporation had been dissolved. They argue that the statute only authorizes transfers for the *purpose* of winding up corporate affairs; if no one knew of the dissolution, they could not have had the necessary intent to wind up the corporation's affairs.

■ The Court rejects this narrow interpretation of the statute. Section 496A.102 provides that a dissolved corporation may "continue to act for the purpose of conveying title to its property, real and personal, and otherwise winding up its affairs." A corporation winds up its affairs by settling its accounts and liquidating its assets. Accordingly, the Court finds that the bankruptcy court properly construed the statute to require that the purpose of the corporation's conveyance was to cease and liquidate its business. It is irrelevant whether the corporate officers were aware of the fact that the corporation was dissolved; the key factor was whether the officers intended to cease corporate operations and liquidate corporate assets. Applying this construction of the statute, the bankruptcy court correctly found that the Morris brothers had ceased operations and were liquidating the business when they sold all of the farm equipment in 1982 and conveyed all of the farmland to Intra that year.

■ They appellants assert that the bankruptcy court disregarded Iowa statutes setting forth the formal requisites for the valid liquidation of corporations. But, as the bankruptcy court pointed out, these formal requisites apply only to voluntary dissolutions. Opinion, Bankruptcy Record Document No. 159 (*In re Morris,* Bk. Nos. 89–41056 & 89–41059, Adv. Nos. 90–0055 & 90–0056, slip op. at 3 (Bankr.S.D.Ill. Jan. 25, 1993)). The Iowa Code does not specify a plan or procedure to be followed by involuntarily dissolved corporations. Moreover, the procedure for notifying known and unknown creditors was not part of the Iowa Code until 1989. *See* Iowa Code §§ 490.1406, 490.1407 (1989).

■ The appellants argue that regardless of the absence of a statutory provision, the Supreme Court's decision in *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), requires that creditors be given notice of the dissolution of a corporation so that they can protect their interests. There appears to be some question as to whether *Tulsa's* holding is retroactive. *See Farm Credit Bank of St. Louis v. Brown,* 217 Ill. App.3d 730, 160 Ill.Dec. 581, 577 N.E.2d 906 (5th Dist.1991) (holding that *Tulsa* did not apply retroactively). However, even if notice were required, this would not invalidate the transaction in favor of the debtors and their creditors in this case. The purpose of notifying the corporation's creditors is to give those creditors an opportunity to collect outstanding debts from the corporation. It would be a perversion of justice to nullify a conveyance to a creditor of the corporation and allow the Morris brothers—and their personal creditors—to benefit from their failure to properly notify all other creditors of Morris, Inc.

■ The appellants argue that Iowa's winding-up provision implicitly requires a corporation to fairly settle its affairs with all debtors rather than paying off a single creditor at the expense of others. However, as the bankruptcy court points out, Iowa statutes provide a means by which creditors may petition a court of equity to liquidate the business of a dissolved corporation and so ensure that the liquidation process is completed. If a corporation fails to satisfy all of its creditors in the process of liquidation, that does not invalidate the corporation's other acts of liquidation. In short, the transfer at

issue in this dispute would be voidable upon petition of another creditor of the corporation—but it is not patently void so as to enrich the shareholders of the corporation and their personal creditors at the expense of a bona fide creditor of the dissolved corporation.

Based upon this analysis, the Court concludes that the bankruptcy court correctly found that Morris, Inc., had properly conveyed its farmland to Intra pursuant to the Iowa corporate survival statute. Accordingly, the Court affirms the bankruptcy court's order granting summary judgment in favor of Intra and John Hancock on the bankruptcy trustee's complaint seeking possession of the property and authority to sell it for the benefit of the debtors' creditors.

### III. SUMMARY

For the reasons set forth above, the Court hereby **DENIES** the trustee's Motion to Strike Brief of John Hancock Mutual Life Insurance Company (Document No. 20) and **AFFIRMS** the bankruptcy court's order granting summary judgment in favor of Intra Illinois, Inc., Intra USA, Inc., and the John Hancock Mutual Life Insurance Company on the trustee's complaint.

**IT IS SO ORDERED.**